675 A.2d 268

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Daniel Michael SARANCHAK, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 25, 1995.

Decided April 24, 1996.

Kent D. Watkins, St. Clair, for Appellant.

Claude A.L. Shields, Pottsville, Robert A. Graci, Attorney General's Office, Harrisburg, for Appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### OPINION OF THE COURT

CASTILLE, Justice.

Appellant pled guilty generally to two separate murders. Following a degree of guilt hearing, the trial court found appellant guilty of first degree murder in both charges.[1] Following a non-jury trial on the other charges filed against appellant, appellant was convicted of burglary,[2] robbery[3] and

1. 18 Pa.C.S. § 2502(a).
2. 18 Pa.C.S. § 3502(a).
3. 18 Pa.C.S. § 3701.

conspiracy.[4] At the penalty hearing, a jury was empaneled and it determined that two aggravating circumstances existed on each count of murder beyond a reasonable doubt: that the murders were committed during the perpetration of a felony (robbery)[5] and that appellant had been convicted of another murder, committed either before or at the time of the offenses at issue.[6] No mitigating circumstances were found. As required by statute in such circumstances, the jury set the penalty at death.[7] *See, Commonwealth v. Basemore*, 525 Pa. 512, 582 A.2d 861 (1990)(the jury found one aggravating circumstance and no mitigating circumstances and thus, was required to impose the death sentence). On September 15, 1994, the court imposed the jury's sentence of death for both first degree murder convictions and further sentenced appellant to serve consecutively the maximum allowable prison sentences on the three remaining felonies. This direct appeal followed.

## I. Sufficiency of the Evidence

Although appellant does not challenge the sufficiency of the evidence regarding his first degree murder convictions, we are required in all cases where the death penalty has been imposed, to independently undertake a review of the sufficiency of the evidence, even where a plea of guilty has been entered.[8] *Commonwealth v, Zettlemoyer*, 500 Pa. 16, 26, 454 A.2d 937, 942 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). When reviewing a sufficiency of

**4.** 18 Pa.C.S. § 903.

**5.** 42 Pa.C.S. § 9711(d)(6).

**6.** 42 Pa.C.S. 9711(d)(11).

**7.** *See,* 42 Pa.C.S. § 9711(c)(1)(iv)—the verdict must be a sentence of death if the jury unanimously finds at least one specified aggravating circumstance and no mitigating circumstances.

**8.** Although appellant chose not to in his case, generally a defendant who is convicted of first degree murder by virtue of a guilty plea to murder, may challenge the sufficiency of the evidence regarding the first degree conviction. *Commonwealth v. Robinson,* 442 Pa. 512, 276 A.2d 537 (1971).

the evidence claim, an appellate court, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner, must determine whether the evidence was sufficient to enable the fact finder to find that all of the elements of the offenses were established beyond a reasonable doubt. *Commonwealth v. Burgos*, 530 Pa. 473, 476, 610 A.2d 11, 13 (1992). Viewing the evidence presented in the trial court below in its proper light, we find that the evidence amply supports the convictions of first degree murder.

The following facts form the basis for appellant's convictions: on October 16, 1993, appellant's 78 year-old uncle, and 87 year-old grandmother were found dead in their residence located in the village of Cumbola, Pennsylvania. Their bodies were discovered after appellant's uncle had not shown up for work and his employer went to the home to see if anything was wrong. The employer entered the home through the basement door, discovered the uncle's dead body and summoned the police. When the police arrived at the home, they found appellant's grandmother with a single gunshot wound in the forehead in the upstairs bedroom. Appellant's uncle was found shot to death lying on a couch in the basement. During the subsequent investigation, the police spoke to appellant's mother who informed the police that all she knew was that the night before, appellant had taken his brother's firearm and had gone to the area in Cumbola village known as Five Points to go "shooting." [9] After obtaining this information, the police went to appellant's apartment and transported him to the police station for questioning.

**9.** Several police detectives testified at the degree of guilt hearing that immediately after securing the crime scene, they canvassed the neighborhood and questioned neighbors. Based upon the information they obtained, the police contacted appellant's mother and she informed the police where appellant was currently residing. Based on the mother's statement that appellant had taken a firearm and was in the area of Cumbola on the night of the murders, the police secured a search warrant for appellant's apartment where they confiscated a .22 caliber rifle whose bullets were later determined through ballistic tests to match bullets recovered from the victims' bodies.

At the police station, appellant was advised of his Miranda rights.[10] Appellant indicated that he understood his rights and that he waived those rights. He then gave a verbal statement to the police in which he indicated that on the night of the murders he was at a bar with another male, Roy Miles, and that after a few beers, he and Miles left the bar and traveled to his brother's house to pick up his brother's .22 caliber rifle. He and Miles then went to his grandmother's house where he shot his uncle. Appellant refused to give the police any information regarding the shooting of his grandmother. After his statement, the police arrested appellant for the murder of his grandmother and uncle.

Appellant's co-conspirator, Miles, testified at the degree of guilt hearing that while at a bar, he and appellant were drinking and they ran out of money.[11] Appellant told Miles that he knew where they could obtain more money, but that they might have to kill someone to get it. Miles agreed to this proposition and both individuals left the bar and went to appellant's house and retrieved the rifle. The two men then drove to appellant's grandmother's house several miles away. Once they arrived at the house, Miles accompanied appellant, who was armed with the rifle, down into the basement of the house where appellant's uncle was sleeping. Appellant then fired a single shot into his uncle's head killing him instantly. He then told Miles to search his uncle's pockets and take his uncle's wallet which contained a sum of cash. Thereafter, the two men went upstairs to the grandmother's bedroom. As appellant's grandmother was speaking to him, he shot her in the forehead one time killing her instantly as well. The two men then left the house and returned to the bar in Pottsville.[12]

10. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

11. Miles pleaded guilty to burglary, theft, receiving stolen property, robbery, aggravated assault, conspiracy and third degree murder for the killings. He has been sentenced to 9 to 20 years in prison.

12. Numerous other Commonwealth witnesses testified that appellant and Miles had been in the bar the night after the murders occurred and that both men were carrying large sums of money.

A social worker who had interviewed appellant at prison testified at the degree of guilt hearing that appellant told her that he and Miles had gone to his grandmother's house to get money, that he had retrieved a rifle to take with him, that he shot his uncle and that they took money from his dead uncle's pockets. She further testified that although appellant refused to give any specific details regarding his grandmother's murder, appellant slipped more than once and stated that he killed "them" and not just "him."

Additional testimony at the degree of guilt hearing included that of a police lieutenant who testified that the shell casings found near both deceased's bodies had been fired from appellant's rifle. Autopsy reports were also admitted which corroborated that both victims died as a result of gunshot wounds to the head fired from the rifle possessed by appellant.

In first degree murder cases, the Commonwealth must prove that the defendant acted with a specific intent to kill, that a human being was unlawfully killed, that the person accused did the killing, and that the killing was done with deliberation. *Commonwealth v. Mitchell,* 528 Pa. 546, 550, 599 A.2d 624, 626 (1991).[13] Appellant's statements to the police and the social worker, combined with the corroborating testimony of his co-conspirator, Miles, and other evidence clearly showed that appellant, with premeditation, planned to kill, and did kill, two human beings in order to steal money from them. As such, the evidence sufficiently demonstrates that the killings here were done with premeditation, deliberation and in cold blood. Therefore, the evidence sufficiently supports appellant's two first degree murder convictions.

## II. Improper Exclusion of Prospective Jurors

Turning to the issues appellant expressly raises herein, his first claim is that the trial court erroneously excluded for

---

13. **18 Pa.C.S. § 2502. Murder.**

(a) **Murder of the first degree.**— A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

"**Intentional killing.**" Killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing.

cause six prospective jurors on the basis that each would be unable to impose the death penalty. Appellant claims that they should not have been excused for cause because they did not have sufficient reservations about their ability to impose the death penalty in order to warrant their exclusion. We do not agree.

It is well settled that a prospective juror may be excluded for cause when his views on capital punishment are such as would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath." *Commonwealth v. Holland,* 518 Pa. 405, 410, 543 A.2d 1068, 1073 (1988). Furthermore, absent an abuse of discretion, a trial court's ruling on a challenge for cause, based upon prospective juror's answers and demeanor during *voir dire* will not be disturbed on appeal. *Commonwealth v. Abu–Jamal,* 521 Pa. 188, 193, 555 A.2d 846, 851 (1989). Here, the *voir dire* transcript demonstrates that the six individuals in question took the following positions when asked about their ability to impose the death penalty:

*Potential Jurors:*

*Juror # 1*—Question: "So you are saying you would automatically vote against the imposition of the death penalty?" Answer: Yes.

*Juror # 2*—Question: "Do you have a fixed opinion against the death penalty?" Answer: "Yes, I think I do." Question: "Would you say then that you would vote automatically against the imposition of the death penalty?" Answer: "The way I feel right now, yes, I would. I'd be against the death penalty."

*Juror # 3*—Question: "Are you saying that you would listen to this and whatever you heard when you went back to that room you would automatically vote against the death penalty?" Answer: "Yes."

*Juror # 4*—Question: "You said it would be hard. Could you explain that?" Answer: "I guess I .... don't think I can make that decision." Question: "You don't believe that

you could make the decision itself? Is that the problem?" Answer: "No, I think it would bother me."

*Juror # 5*—Question: "Have you as a result of anything that you read or anything that you have heard, formed an opinion concerning which punishment the defendant should receive?" Answer: "Not what I read; but of a matter of conscience, I would not be able to condemn a man to death."

*Juror # 6*—Question: "And, assume that the evidence so requires it, would you be able to return a verdict of the death penalty?" Answer: "I don't think so." Question: "Well, could you vote for the death penalty?" Answer: "I don't think so."

(N.T. 9/12/94 pp. 55, 68, 94, 160, 222 and 239). The record reveals an ample basis for the trial court's findings that the six individuals in question would have been, as a result of their preconceived beliefs or attitudes, "substantially impaired" in the performance of their duties as jurors. Therefore, the trial judge did not abuse its discretion in excluding these jurors. Thus, appellant's claim is meritless.

### III. Ineffective Assistance of Counsel

Appellant next broadly asserts that the trial court erred in refusing to grant his request for appointment of new appellate counsel to review the record to attempt to ascertain if there were any viable issues of ineffectiveness of trial counsel such as to warrant a new trial or sentencing hearing. A review of the record fails to demonstrate that appellant made such a request to the court for new counsel and appellant fails to indicate when or how he petitioned the court for new appellate counsel. Furthermore, there is no evidence that the trial court ever ruled upon such a motion. In fact, the record indicates only that appellant's counsel filed a motion to allow him to *continue* to represent appellant *in forma pauperis,* that the trial court granted the motion, and that appellant's trial counsel continued to represent him on appeal. It is appellant's responsibility to ensure that any relevant related matter be filed or made part of the original record. *Commonwealth v. Ahearn,* 543 Pa. 174, 670 A.2d 133 (1996);

*see also,* Pa. R.A.P. §§ 1911, 1923. To the extent that the record is deficient to review appellant's claim, appellant has the opportunity to request that the omission be corrected by the trial court. Pa. R.A.P. § 1926. Because the record in this case is devoid of any ruling by the trial court on a motion for new appellate counsel, this Court can only assume that no such ruling occurred or that appellant failed to correct the apparent omission in the record of any such request for counsel and the trial court's ruling thereon. Assuming that the latter instance is the case, we will not review a claim where the record fails to demonstrate or support the allegation of error. Hence, this claim is without merit.[14]

### IV. Admission of Photograph

Next, appellant asserts that the trial court erred in allowing evidence at the penalty hearing (over defense counsel's objection) of a black and white photograph of appellant's grandmother after she had been shot on the grounds that the photograph was not relevant and was prejudicial. In the alternative, appellant argues that even if the photograph was relevant, the trial court still erred in admitting the photograph since its relevance was outweighed by its prejudicial nature.

The admissibility of photographs depicting a crime scene is within the sound discretion of the trial court and only an abuse of that discretion will constitute reversible error.

---

**14.** In any event, whether a petition for change of court-appointed counsel should be granted is within the sound discretion of the trial court. *Commonwealth v. Williams,* 514 Pa. 62, 65, 522 A.2d 1058, 1061 (1987). Furthermore, 42 Pa. R.Crim.P. § 316(c) provides that a motion for change of counsel by a defendant to whom counsel has been assigned, shall not be granted except for substantial reasons.

In view of appellant's total failure to demonstrate any violation of his right to effective assistance of counsel in the context of the circumstances of this case, his failure to state any specific claim of arguable merit, and his failure to support his claim by appropriate references to the record or by citations to legal authority, the trial court's refusal of the request was not an abuse of discretion. *See, Commonwealth v. Moore,* 534 Pa. 527, 633 A.2d 1119 (1993)(appellant's claims of ineffective representation by counsel were completely lacking in substance and thus, the trial court did not err in refusing to remover appointed counsel).

*Commonwealth v. Buehl,* 510 Pa. 363, 366, 508 A.2d 1167 (1986). A photograph of a murder victim in a homicide trial is not inflammatory *per se.* Whether the photographs are admissible depends on a two step analysis. First, the court must decide whether a photograph is inflammatory in nature. If the photograph is deemed inflammatory, the court must then apply a balancing test of whether the photograph is of such essential evidentiary value that its need outweighs the likelihood of inflaming the minds and passions of the jury. *See, Commonwealth v. Marshall,* 537 Pa. 336, 341, 643 A.2d 1070, 1075 (1994).

Further, this Court has stated that a capital sentencing hearing is not a sanitized proceeding limited only to evidence of aggravating circumstances. *Commonwealth v. Marshall, supra,* 537 Pa. at 340, 643 A.2d at 1074 (1994). Rather, the jury must be informed of the history and natural development of the events and offenses with which appellant has been convicted, so that the jury can truly understand the nature of the offenses and appellant's character. *Commonwealth v. Young,* 536 Pa. 57, 64, 637 A.2d 1313, 1320 (1993). For the jury to properly perform its function, it must be made aware of the facts of the crime for which appellant is being sentenced and the extent to which those crimes properly support the existence of aggravating circumstances. *Commonwealth v. Stevens,* 543 Pa. 204, 212–13, 670 A.2d 623, 627 (1996).

Here, the black and white photograph was offered during the testimony of one of the police officers to demonstrate his description of the crime scene and the condition in which appellant's grandmother was found, that is sitting upright in her bed after she had been shot. The 87 year-old victim had often slept sitting up due to breathing difficulties and the photograph enabled the jury to visualize how appellant murdered his unsuspecting grandmother with one shot directly in the forehead after he had entered her bedroom. It is also relevant to demonstrate appellant's intent to kill by the single gunshot to the forehead and his malice aforethought.

*Commonwealth v. Chester, Commonwealth v. Laird,* 526 Pa.
578, 585, 587 A.2d 1367, 1374 (1991)(color photograph depict-
ing a close view of the corpse was admitted to prove intent to
kill in a first degree murder case). Hence, under these
circumstances the trial court did not abuse its discretion by
allowing the single black and white photograph to be admitted
in the sentencing phase. *See, Commonwealth v. Buehl,* 510
Pa. 363, 508 A.2d 1167 (1986)(black and white photographs
admitted at trial were relevant as they depicted the victims as
they were found and demonstrated the position of appellant
when the fatal shots were fired); *Commonwealth v. Rush,* 538
Pa. 104, 646 A.2d 557 (1994)(photographs of the murdered
victim's body provided the jury with evidence of the assailant's
intent). Accordingly, no relief on this claim is warranted.

### V. Improper Jury Instruction

Appellant next asserts that he is entitled to a new sen-
tencing hearing because the court's instructions to the jury
regarding mitigating circumstances was confusing and mis-
leading to the jury. Specifically, appellant challenges the
following instruction:

> The Sentencing Code of Pennsylvania defines aggravating
> and mitigating circumstances. They are things that make a
> first degree murder case more or less terrible. (N.T.
> 9/15/94 p. 166).

A jury charge by the trial court shall be evaluated
on the basis of the entire charge and not on separate, discrete
portions of the charge. *See, Commonwealth v. Wortham,* 471
Pa. 243, 369 A.2d 1287 (1977)(appellate evaluation of the
charge must be based on an examination of it as a whole to
determine whether it was favorable or not). Furthermore, in
order for a new sentencing hearing to be warranted, the
instruction must have caused some articulable prejudice.
*Commonwealth v. May,* 540 Pa. 237, 252, 656 A.2d 1335, 1343
(1995). The trial court is free to use its own form of expres-
sion in order to explain to the jury often-difficult legal con-
cepts. The only issue is whether the area covered by the
instruction adequately, clearly and accurately presents the

issue to the jury. *Commonwealth v. Faulkner,* 528 Pa. 57, 595 A.2d 28 (1991)(the trial judge has broad discretion in phrasing points for charge and is not bound to give instructions in the form requested); *see also, Commonwealth v. Smith,* 511 Pa. 343, 513 A.2d 1371 (1986).

■■■ Appellant claims that the charge regarding mitigating circumstances improperly informed the jurors that mitigating circumstances were only those that made the murders themselves less terrible, and that the instructions failed to inform the jury that appellant's character could be considered to support a finding of mitigating circumstances. Appellant claims that as a result of these faulty instructions, the jury was precluded from finding any mitigating circumstances. This claim is baseless.

At the outset we note that appellant selectively omitted the remainder of the trial court's instructions given regarding mitigating circumstances which provided:

> [I]f you find by a preponderance of the evidence that the defendant, that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired or ... any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense, ... then you will have found mitigating circumstances. (N.T. 9/15/94 p. 171–172).

Clearly, this instruction *did* instruct the jury that it could consider appellant's character as mitigating evidence. Further, evaluating the charge as a whole, this Court finds that the jury was appropriately informed that in order to find mitigating circumstances the jury must determine that evidence existed showing appellant's character was impaired in some way so as to diminish his capacity to appreciate his criminal behavior.[15] Moreover, this instruction is in conformity with the Pennsylvania Suggested Standard Criminal Jury

---

15. A review of the record indicates that the mitigating circumstances appellant presented to the jury included only evidence that appellant used alcohol/drugs immediately prior to the offense and/or that he had a history of alcohol/drug abuse. *See,* 42 Pa.C.S. § 9711(e).

Instructions and specifically addresses the constitutional requirements outlined in *Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990)(the jury must be allowed to consider and give effect to all relevant mitigating evidence and the types of mitigating evidence must not be unduly limited). Thus, appellant's argument is meritless.

## VI. Appeal of Discretionary Aspects of Sentence

Finally, appellant contends that the trial court abused its discretion in sentencing appellant outside the sentencing guidelines on his convictions for robbery, burglary and conspiracy.[16] Appellant does not dispute that the sentences imposed were legislatively permitted;[17] rather, appellant challenges the discretionary aspects of the sentences imposed. Such appeals are governed by Pa. R.A.P. § 2119(f) which states that an appellant who challenges the discretionary aspects of a sentence in a criminal matter must set forth in his brief a concise statement of reasons relied upon for allowance of appeal, and that such a statement shall immediately precede the argument on the merits with respect to the discretionary aspects of the sentence. Pa. R.A.P. § 2119(f). This procedural requirement allows the court to determine if an appellant has demonstrated a "substantial question" which is necessary to invoke appellate review. 42 Pa.C.S. § 9781(b).

16. The trial court imposed the following sentences be served consecutively to one another and consecutive to the two death sentences: 10—20 years for robbery; 10—20 years for burglary; and 5 –10 years for conspiracy. *See*, 18 Pa.C.S. § 1103.

In support of the sentences imposed, the judge stated that appellant's two first degree murder convictions, the gruesome nature of appellant's brutal murder of his own elderly relatives, and the attendant circumstances provided ample justification for sentencing appellant outside the recommended guidelines. Absent an abuse of discretion, this Court will not substitute its judgment for that of the trial judge in sentencing matters. *Commonwealth v. Ward*, 524 Pa. 48, 568 A.2d 1242 (1990)(since there was no mandatory sentence to be imposed for the offenses appellant had committed, the trial court had the discretion to impose a sentence outside the guidelines as long as it was within the statutorily permitted ranges).

17. It is well-established that a sentencing court can impose a sentence that is the maximum period authorized by the statute, 42 Pa.C.S. § 9756(a).

The procedural rule, Pa. R.A.P. § 2119(f) is designed to enhance the functioning of appellate review process. *Commonwealth v. Gambal,* 522 Pa. 280, 283, 561 A.2d 710, 713 (1989). The legislature has provided 42 Pa.C.S. § 9721, a thorough, though not exhaustive, outline of considerations to focus the court's deliberations in imposing an appropriate sentence. *Commonwealth v. Tuladziecki,* 513 Pa. 508, 511, 522 A.2d 17, 20 (1987). To demonstrate that a substantial sentencing question exists, a party must articulate reasons why a particular sentence raises doubts that the trial court did not properly consider these general guidelines provided by the legislature. *Id.*

In the instant case, appellant has failed to provide the required prefatory *Tuladziecki* statement of reasons relied upon for appeal. Appellant has not only failed to comply with this procedural requirement, but he has also failed to articulate how his legal sentences present this Court with a substantial question regarding his sentences. Thus, this issue warrants no further review by this Court.[18]

## VII. Proportionality Review

Finally, pursuant to 42 Pa.C.S. 9711(h)(3)(i), we have reviewed the sentences of death and the record below and have determined that appellant fails to demonstrate that he is entitled to relief under the three criteria set forth under 42 Pa.C.S. 9711(h)(3). Specifically, we find that: (i) his sentences were not the product of passion, prejudice or any other

---

18. Although this Court is permitted to overlook a party's failure to provide a prefatory statement when the Commonwealth fails to object to the omission, it should only do so in situations where the substantial question presented is evident from appellant's brief. *Commonwealth v. Gambal, supra,* 522 Pa. at 283, 561 A.2d at 713 (1989). Appellant's boilerplate assertion that he should be resentenced simply because the trial court sentenced him outside the Sentencing Guidelines without more does not present a substantial question. *Id.*

A court has no duty to impose a sentence considered appropriate under the Sentencing Guidelines. *Commonwealth v. Sessoms,* 516 Pa. 365, 532 A.2d 775 (1987). The guidelines are not mandatory; rather, they must only be considered. *Id.* Appellant must, at a minimum, explain specifically why he thinks his sentences were improper. This he does not do.

arbitrary factors; (ii) the evidence supported the finding of at least one aggravating circumstance specified in subsection (d) for each murder; and (iii) the sentences of death for each murder were not excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

Upon reviewing the record below, it is evident that the verdict was not the product of passion, prejudice or any other arbitrary factors. Rather, it is clear that the jury's verdict was based upon appellant's cold blooded murder of two elderly, defenseless relatives for nothing more than drinking money for himself and his cohort, Miles.

With respect to the sufficiency of the evidence regarding at least one aggravating circumstance specified in subsection (d), we find that sufficient evidence existed to support each of the two aggravating circumstances found by the jury on both murder counts (namely, that the murder was committed during the perpetration of a felony, robbery, and that appellant was convicted of another murder committed before or at the time of the offense).[19] The evidence of appellant's first degree murder convictions for both murders provides sufficient support for the jury's finding of an aggravating circumstance that appellant had been convicted of another murder committed at or before the time of the offense. *See, Commonwealth v. Crawley,* 514 Pa. 539, 526 A.2d 334 (1987)(evidence was sufficient to support same aggravating circumstances where appellant was convicted of murdering three victims during the course of a robbery). Where there are no mitigating factors found and there is a finding of at least one aggravating circumstance, the sentencing court has no discretion but to impose the death penalty. *Commonwealth v. Smith,* 511 Pa. 343, 358–59, 513 A.2d 1371, 1378 (1986), *citing,* 42 Pa.C.S. § 9711(c)(1)(iv).

With respect to the final factor we are required to consider, in accordance with *Commonwealth v. Zettlemoyer,* 500 Pa. at 63, 454 A.2d at 961, this Court has conducted an

19. 42 Pa.C.S. § 9711(d)(6)(ii).

independent evaluation of all of the death penalty cases decided since September 13, 1978, in order to determine whether appellant's two capital sentences were disproportional to the sentences imposed in similar cases taking into consideration both the circumstances of the offense and the character and the record of the defendant. *See, Commonwealth v. Frey,* 504 Pa. 428, 443–445, 475 A.2d 700, 707–709 (1984); *Commonwealth v. Santiago,* 541 Pa. 188, 662 A.2d 610, 613 (1995).[20] Our review reveals that where, as here, there are no mitigating circumstances present and the Commonwealth has proven that the defendant committed the killing during the perpetration of a felony and had been convicted of another murder at the time of the killing, the defendant has been sentenced to death in essentially every instance. *See, e.g., Commonwealth v. Zook,* 532 Pa. 79, 615 A.2d 1 (1992); *Commonwealth v. Faulkner,* 528 Pa. 57, 595 A.2d 28 (1991); *Commonwealth v. Crawley,* 514 Pa. 539, 526 A.2d 334 (1987); *See,* 42 Pa.C.S. § 9711(c)(1)(iv)(the verdict must be sentence of death if the trier of fact finds at least one aggravating circumstance and no mitigating circumstances.) Therefore, we conclude that the sentence of death imposed upon appellant is not excessive or disproportionate to the sentence imposed in similar cases.

For the foregoing reasons, we uphold the convictions and affirm the judgment of sentence of death.[21]

---

**20.** Our proportionality review was aided, in part, by the sentencing data compiled and monitored by the Administrative Offices of Pennsylvania Courts (AOPC).

**21.** The Prothonotary of the Supreme Court is directed to transmit to the governor's office, within 90 days, the full and complete record in this matter. 42 Pa.C.S. § 9711(i).