J-S08009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL PARKER | |
| Appellant | No. 307 WDA 2016 |

Appeal from the Judgment of Sentence dated January 14, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013119-2014

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and SOLANO, J.

MEMORANDUM BY SOLANO, J.:                    **FILED MAY 09, 2017**

Appellant, Michael Parker, appeals from the judgment of sentence imposed after the trial court convicted him of possession with intent to deliver a controlled substance ("PWID"), possession of a controlled substance, and illegal possession of a firearm.[1]  We affirm.

The trial court recited the factual findings which informed its disposition as follows:[2]

> On August 22, 2014, officer[s] from the City of Pittsburgh Bureau of Police, including members of the SWAT team, went to an apartment building located at 1604 Sandusky Court, Apartment 279, in the City of Pittsburgh to serve a search warrant.  As the officers neared the main door of the apartment building, an audible warning was issued to the residents of the

---

[1] 35 P.S. § 780-113(a)(30) and (16), and 18 Pa.C.S. § 6105(c) respectively.

[2] The trial court described its factual recitation as "the credible facts relevant to this appeal."  Trial Court Opinion, 6/22/16, at 1.

apartment, via a microphone, that officers were about to serve the search warrant. Officers continued up the stairs of the apartment building toward apartment 279. When they arrived at the door to Apartment 279, they again informed the occupants that they had a search warrant. After making this announcement three times without a response, officers were given authority to manually breach the door. Immediately after the officers breached the door, the door swung back at the officers. One officer was face to face with [Appellant] and he immediately identified [Appellant] as being the person behind the door attempting to push the door closed. Despite the officer's best effort to push the door open, [Appellant] was able to get the door closed and locked. [Appellant] then tried to barricade the door closed by moving a couch and other furniture behind the door.

While SWAT officers were attempting to gain entry to the apartment, Officer Sovko, who was outside and securing the front door of the apartment building, observed a number of items being thrown from the window of Apartment 279. Among the items that were being discarded were four baggies of cocaine. All four baggies were recovered and the aggregate weight of the cocaine seized in this case was 101.632 grams.

Officer Friburger ha[d] set up a surveillance point behind a tree on a hillside near the apartment. He had clear vision into Apartment 279. He observed [Appellant] and others within a room in the rear of Apartment 279. While officers were trying to gain entry into Apartment 279, Officer Friburger observed [Appellant] remove something black from his waistband. [Appellant] took a defensive shooting position from behind a corner of a wall and pointed what Officer Friburger believed to be a handgun at the front door of Apartment 279 where members of the SWAT team were attempting to gain entry. Eventually, police negotiators diffused the situation and all of the occupants, including [Appellant], raised their hands while in the rear room. Officer Friburger radioed the other officers that it was safe to force entry into the apartment. Officers forced entry into the apartment with a ram and took the residents into custody. [Appellant] was among them.

A search of the residence yielded a Glock 9 millimeter handgun recovered from a bedroom drawer. Also recovered were nine millimeter ammunition as well as other caliber

ammunition, a stun gun, digital scales and sandwich baggies. Court papers for [Appellant] were found in Apartment 279. No drug use paraphernalia was recovered. After [Appellant] was taken into custody, two cell phones were recovered from him as well as $950 in cash and a small amount of marijuana. After his arrest, [Appellant] admitted to the police officers that [the] firearm recovered in the house belonged to his brother and he knew it was in the residence.

An analysis of the cell phones seized in this case disclosed that [Appellant] and his brother had been communicating on August 19, 2014. The text messages indicated that [Appellant] and his brother were discussing drug prices and quantities using street slang to describe the cocaine and prices.

The Commonwealth presented an expert witness to present an opinion as to whether the cocaine recovered in this case was possessed with the intent to distribute it. The expert testified that he considered 101.632 grams of cocaine to be substantial. Based on this quantity, the existence of a firearm, digital scales, plastic baggies, the cash recovered from [Appellant], the lack of use paraphernalia and the contents of the text messages describing amount and prices of cocaine, the expert opined that the cocaine was possessed with the intent to distribute it. The Court found that testimony credible.

Trial Court Opinion, 6/22/16, at 2-4.

The trial court rendered its convictions on October 21, 2015. On January 14, 2016, the trial court sentenced Appellant to 4 to 10 years' incarceration for possession with intent to deliver, and a consecutive 1 to 2 years' incarceration for illegal possession of a firearm.[3] Appellant was sentenced to an aggregate 5 to 12 years' incarceration. He filed a post-sentence motion on January 25, 2016, which the trial court denied the

_____

[3] Appellant's conviction for possessing a controlled substance merged with his conviction for possession with intent to deliver.

following day. Appellant then filed this timely appeal, in which he presents

three issues for our review:

1. Whether the trial court erred in holding that the evidence was sufficient to support the guilty verdicts as to the charges of possession with intent to deliver and simple possession under 35 Pa.C.S. §§ 780-113(a)(30) and 780-113(a)(16)?

2. Whether the trial court erred in holding that the evidence was sufficient to support the guilty verdict as to the charge of person not to possess a firearm under 18 Pa.C.S. § 6105(c)(ii)?

3. Whether the trial court's sentence of five (5) to twelve (12) years of incarceration was an abuse of discretion and a misapplication of the guidelines?

Appellant's Brief at 5.

With regard to Appellant's first and second issues, the following

discussion from **Commonwealth v. Roberts**, 133 A.3d 759, (Pa. Super.

2016), **appeal denied**, 145 A.3d 725 (Pa. 2016), is applicable:

Appellant's first contention is the evidence was insufficient to sustain his convictions for PWID and possession of a controlled substance.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be

drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Brooks**, 7 A.3d 852, 856–57 (Pa.Super.2010) (citations omitted).

To sustain a conviction for PWID, "the Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance." **Commonwealth v. Lee**, 956 A.2d 1024, 1028 (Pa.Super.2008) (citations omitted). It is well settled that "[i]n narcotics possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the contraband." **Commonwealth v. Vargas**, 108 A.3d 858, 868 (Pa.Super.2014) (*en banc*) (quotation and quotation marks omitted). Here, the police did not discover the controlled substances on Appellant's person, and thus, we must determine whether the Commonwealth sufficiently established that Appellant had constructive possession of the controlled substances.

This Court has defined constructive possession as follows:

Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

> **Commonwealth v. Brown**, 48 A.3d 426, 430 (Pa.Super.2012) (quotation omitted). "The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant." **Id.** (citation omitted).

133 A.3d at 767–68.

Here, Appellant argues that the evidence was insufficient to support both his drug convictions and conviction of illegal possession of a firearm because the Commonwealth failed to prove that he constructively possessed the cocaine ejected from the apartment, and "no officer ever testified that they saw [Appellant] in actual possession of a firearm." Appellant's Brief at 14-15. Appellant emphasizes that there were six people in the apartment when the cocaine was thrown from the window, there was no DNA or scientific evidence linking him to either the cocaine or the firearm recovered from the bedroom, and the text messages with his brother were "too vague, remote in time and otherwise weak." **Id.**

In response, the Commonwealth first asserts that Appellant has waived both of his sufficiency claims because he fails to develop and support his arguments with citation to legal authority. Commonwealth Brief at 8, 18; **see also** Pa.R.A.P. 2119(a) (the argument shall include "discussion and citation of authorities as are deemed pertinent"). Alternatively, the Commonwealth liberally references the trial testimony to rebut Appellant's claims and argue that the evidence supported a finding that Appellant constructively possessed both the drugs and the firearm. Commonwealth

Brief at 8-21. For example, the Commonwealth references Appellant's efforts to barricade the door while the police attempted to execute a search warrant, as well as Officer Sovko's testimony that he observed the four baggies being discarded from the apartment. Commonwealth Brief at 11. The Commonwealth also references Officer Friburger's observations of Appellant in a "shooting stance" with what looked to be a firearm, and the fact that Appellant stated he was aware the firearm was in the apartment. *Id.* at 20.

Upon review, and even in the absence of waiver, the Commonwealth's rebuttal is supported by the record, and comports with the reasoning of the trial court. The trial court explained:

> The evidence in this case was clearly sufficient to demonstrate that [Appellant] possessed with intent to deliver cocaine. The Court agrees with the expert witnesses who determined that the large quantity of cocaine coupled with the existence of digital scales and plastic baggies provided ample proof that the cocaine was intended to be distributed. [Appellant's] actions in barricading himself in Apartment 279 and pointing a firearm at the entry door of Apartment 279 were indicative of his strong desire to prevent police officers from entering the apartment. The text messages between [Appellant] and his brother, in this Court's view, were discussion[s] about cocaine quantities and prices. Based on the actions of [Appellant], this Court believed beyond a reasonable doubt that [Appellant's] aggressive actions were taken to prevent the police from entering the apartment in order to protect the cocaine. This Court believes that there was sufficient evidence to demonstrate that [Appellant] resided in the residence and that his actions clearly demonstrated that he had ability to control the cocaine that was thrown out the window. This evidence was sufficient to prove [Appellant] constructively possessed the cocaine. . . .

In this case, Officer Friburger testified credibly that he was able to observe [Appellant] in the apartment remove a black object from his waistband, take a defensive stance and point the object at the front entry door of Apartment 279. Though he could not conclusively testify that he saw a firearm, it appeared to him that [Appellant] was pointing a firearm at the door where police officers were about to enter. After the police officers secured the area where [Appellant] was located, Officer Friburger's suspicions were confirmed when the firearm was recovered in a dresser drawer. [Appellant] admitted that he was aware that there was a firearm in the residence. This Court believes this evidence was sufficient to convict him of possessing the firearm.

Trial Court Opinion, 6/22/16, at 6-7, 9.

Based on our review of the record, we discern no error in the trial court's conclusion that the evidence was sufficient to support Appellant's drug and firearm convictions. Accordingly, Appellant's first and second issues are without merit.

In his third and final claim, Appellant argues that the trial court abused its discretion in imposing Appellant's sentence. We may not exercise our discretion to review this issue unless we first determine that: (1) the appeal is timely; (2) Appellant preserved his issue; (3) Appellant's brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentences, as required by Rule 2119(f) of the Pennsylvania Rules of Appellate Procedure; and (4) the concise statement raises a substantial question that the sentences were inappropriate under the Sentencing Code. *Commonwealth v. Flowers*, 149 A.3d 867, 870 (Pa. Super. 2016). If the appeal satisfies each of these

prerequisites, we may accept it and proceed to the substantive merits of the case. *Id.* at 87-871.

Instantly, Appellant has satisfied the first, second and third requirements. Appellant filed a timely appeal, preserved his sentencing challenge in his post-sentence motion, and has included a separate Rule 2119(f) concise statement in his appellate brief. *See* Appellant's Brief at 12-13.[4] With regard to a substantial question, our Supreme Court has explained:

> From an appellant's Rule 2119(f) statement, the Superior Court decides whether to review the discretionary aspects of a sentence based upon a case-by-case determination as to whether "a substantial question concerning the sentence exists." *In the Interest of M.W.,* 555 Pa. 505, 725 A.2d 729, 731 (1999) (citing *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17, 19 (1987)). To demonstrate that a substantial question exists, "a party must articulate reasons why a particular sentence raises doubts that the trial court did not properly consider [the] general guidelines provided by the legislature." *Commonwealth v. Koehler,* 558 Pa. 334, 737 A.2d 225, 244 (1999) (quoting *Commonwealth v. Saranchak,* 544 Pa. 158, 675 A.2d 268, 277 (1996)); *see Commonwealth v. Goggins,* 748 A.2d 721, 727 (Pa.Super.2000), *allocatur denied,* 563 Pa. 672, 759 A.2d 920 (2000) (appellant is required only to make a plausible argument that his sentence is either inconsistent with a particular provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process).

*Commonwealth v. Mouzon*, 812 A.2d 617, 621–22 (Pa. 2002).

_____

[4] Although the Commonwealth contends that Appellant's "Rule 2119(f) statement neither establishes the particular provision of the Sentencing Code that has been violated nor specifies what or how any fundamental norm of the Sentencing Code has been offended", Commonwealth Brief at 23, we do not find that the statement is deficient.

We conclude that Appellant has raised a substantial question regarding the propriety of his sentences. Appellant asserts that the trial court imposed an aggravated-range sentence "despite the trial court's apparent attempt to impose a standard-range sentence." Appellant's Brief at 16. In support of this argument, Appellant references a misstatement in the trial court's Rule 1925(a) opinion in which the court stated that "the sentence imposed at the firearm conviction was within the standard range." *See id.*, citing Trial Court Opinion, 6/22/16, at 14. Appellant also assails the trial court's imposition of consecutive sentences, given that "the firearms conviction is in excess of what the trial court apparently attempted to impose." Appellant's Brief at 17.

"[T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion." ***Commonwealth v. Perry***, 32 A.3d 232, 236 (Pa. 2011). An abuse of discretion "is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless 'the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.'" ***Id.*** (citation omitted). An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion. ***Id.***

The trial court sentenced Appellant to an aggregate 5 to 12 years' incarceration: 4 to 10 years' incarceration for possession with the intent to

deliver (with the possession charge merging), and a consecutive 1 to 2 years' incarceration for illegally possessing a firearm. It is uncontroverted that Appellant's 4 to 10 year sentence for possession with intent to deliver was within the standard range, and his 1 to 2 year sentence for illegally possessing a firearm was in the aggravated range. The trial court explained the reason for the sentence on the firearm charge at the sentencing hearing:

> On the gun charge, [Appellant] had no business, no business having a gun. You've been charged with gun charges before. That they didn't stick, as it is said on the street, doesn't change my view of it. You've been charged with this kind of conduct before. You've had to answer for it. There's no way you didn't know you shouldn't be possessing a gun. It doesn't mean you were convicted. You weren't convicted, but you still got charged with it. You still understood from the authorities that you're not to possess a gun. You went and did it anyway, and you used it in this case in a way that endangered police officers. I'll give you, you didn't fire it. I don't mean to suggest and I don't want the record to reflect that you did. You did not, but your initial reaction to the announcement of police out there was to take a defensive position with a gun pointed to the door where police were. We cannot accept that kind of conduct. We cannot accept it.
>
> [Appellant] on that count is sentenced to an additional period of one to two years consecutive to the previous count.

N.T., 1/14/16, at 18-19. In summation, the trial court stated:

> The total sentence is 5 to 12 years. That's the total sentence.
>
> It's a shame. You take a healthy young man such as [Appellant] and have to put him in a cage for that long, but he has demonstrated that he is a serious danger to the community generally and to the police community in particular, and I'm unwilling to consider any lesser penalty for that reason.

*Id.* at 20.

- 11 -

The trial court's reasoning demonstrates that it imposed Appellant's sentences with full knowledge of what it was doing and why, and that its reasoning was not manifestly unreasonable or the result of partiality, prejudice, bias or ill-will. In addition, at the outset of the sentencing hearing, the trial court advised that it had ordered a pre-sentence report, which it "read in its entirety." N.T., 1/14/16, at 2. Where pre-sentence reports exist, we presume that the sentencing judge was aware of relevant information regarding the defendant's character and other relevant sentencing considerations and that it weighed those considerations along with mitigating statutory factors. *Commonwealth v. Best*, 120 A.3d 329, 348 (Pa. Super. 2015). Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. *Id.* at 348-349.

> Appellant argues, however, that —
>
> [T]he sentence for Person Not to Possess a Firearm (one (1) to two (2) years) was an aggravated-range sentence . . ., despite the trial court's apparent attempt to impose a standard-range sentence at that count. On that point, the trial court's Rule 1925 opinion . . . states that "the sentence imposed at the firearm conviction was within the standard range . . ." [Tr. Ct. Op.], p. 14. Under these circumstances, the trial court would appear to have erred in its application of the sentencing guidelines. Accordingly, this court should "vacate the sentence and remand the case to the sentencing court [because] the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously." 42 Pa.C.S.A. § 9781(c)(1).

Appellant's Brief at 16-17. Appellant bases this argument on a single sentence in the trial court's Rule 1925(a) opinion. That opinion contained a

lengthy discussion of the legal principles and facts of record that the trial court considered when imposing Appellant's sentence. That discussion reads:

> Defendant was sentenced to a term of imprisonment of not less than 48 months nor more than 120 months relative to the possession with intent to deliver conviction. He was sentenced to a consecutive term of imprisonment of not less than 12 months nor more than 24 months relative to the firearm conviction. . . .
>
> In his final issue, the defendant claims that this Court erred in sentencing the defendant because the aggregate sentence was too harsh. His claims are without merit. A sentencing judge is given a great deal of discretion in the determination of a sentence, and that sentence will not be disturbed on appeal unless the sentencing court manifestly abused its discretion. An abuse of discretion is not a mere error of judgment; it involves bias, partiality, prejudice, ill-will, or manifest unreasonableness.
>
> Furthermore, the "[s]entencing court has broad discretion in choosing the range of permissible confinements which best suits a particular defendant and the circumstances surrounding his crime." Discretion is limited, however, by 42 Pa.C.S.A. §9721(b), which provides that a sentencing court must formulate a sentence individualized to that particular case and that particular defendant. Section 9721(b) provides: "[t]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense, as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant . . . ." Furthermore,
>
> > In imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. . . .
>
> In fashioning an appropriate sentence, courts must be mindful that the sentencing guidelines "have no binding effect, in

that they do not predominate over individualized sentencing factors and that they include standardized recommendations, rather than mandates, for a particular sentence." A sentencing court is, therefore, permitted to impose a sentence outside the recommended guidelines. If it does so, however, it "must provide a written statement setting forth the reasons for the deviation."

A sentencing judge can satisfy the requirement of placing reasons for a particular sentence on the record by indicating that he or she has been informed by the pre-sentencing report; thus properly considering and weighing all relevant factors. . . .

Moreover, the imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court. Title 42 Pa.C.S.A. § 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. "In imposing a sentence, the trial judge may determine whether, given the facts of a particular case, a sentence should run consecutive to or concurrent with another sentence being imposed."

The record in this case supports the sentence imposed by this Court. The sentence imposed at the possession with intent to distribute count was within the standard range of the sentencing guidelines. **Similarly, the sentence imposed at the firearm conviction was within standard range.** Additionally, this Court considered the presentence report as noted at the beginning of the sentencing proceeding. This Court considered the defendant's recurring history of possessing drugs. This Court also noted the defendant's lengthy prior record, including prior stints in jail. His conduct in this case endangered police officers. He refused to open the door, took an aggressive stance and was convicted of possessing a firearm that he pointed toward police officers. Based on the totality of the circumstances, this Court believed the defendant had multiple opportunities to conform his conduct to the law and he repeatedly chose not to do so. He further demonstrated that he is a danger to the community. This Court considered the defendant's rehabilitative needs, protection of the public, deterring the defendant from engaging in future similar conduct, deterring the public from committing such crimes, retribution and the impact on the victim. The sentence imposed in this case

> was not unduly harsh and properly reflected the defendant's culpability in this case.

Tr. Ct. Op. at 1, 11-14 (citations omitted; emphasis added). The single sentence on which Appellant relies for his argument is the sentence emphasized in this quotation.

A review of the transcript from Appellant's sentencing hearing and the entirety of the trial court's Rule 1925(a) opinion makes clear that, contrary to Appellant's argument, the trial court was cognizant of the relevant law and guidelines when it sentenced Appellant, and that it was careful to impose the sentences in accordance with the particular circumstances of Appellant's case. The trial court did not "err[] in its application of the sentencing guidelines." Appellant's Brief at 16. Rather, as the court's opinion confirms, it recognized that it was entitled to impose a sentence that was in the aggravated range of the guidelines so long as it explained its reasons, and the court did explain its reasons — both at the sentencing hearing and in its Rule 1925(a) opinion. It therefore is clear that the court's erroneous sentence stating that Appellant's sentence for illegally possessing a firearm "was within the standard range," Tr. Ct. Op. at 14, does not reflect the trial court's intent as gleaned from the entire record. The trial court's misstatement therefore does not provide grounds for relief.

Based on the foregoing, the record belies Appellant's claim that the trial court abused its sentencing discretion with regard to the 1 to 2 year

sentence for illegally possessing a firearm and the imposition of consecutive sentences. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/2017