J-S02034-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL DAVID JABLANOFSKY | : | |
| | : | |
| Appellant | : | No. 1304 EDA 2024 |

Appeal from the Judgment of Sentence Entered April 11, 2024
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0000946-2023

BEFORE: LAZARUS, P.J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED APRIL 23, 2025**

Michael David Jablanofsky appeals from the judgment of sentence following his guilty plea to incest of a minor, possession of child pornography, criminal use of a communication facility, endangering the welfare of a child ("EWOC"), and corruption of minors.[1] Jablanofsky challenges the court's denial of his pre-sentence motion to withdraw his guilty plea. We affirm.

During jury selection, Jablanofsky expressed to the court he wished to enter a guilty plea. Before the plea, the trial court conducted an oral colloquy with Jablanofsky regarding his understanding of his decision to plead guilty:

> The Court: Okay. Mr. Jablanofsky, it's my understanding then, that you are here now to enter into a guilty plea to the case at 946 of 2023. And, obviously, that is the case

_____

[1] 18 Pa.C.S.A. §§ 4302(b)(2), 6312(d), 7512(a), 4304(a)(1), and 6301(a)(1)(i), respectively.

involving the sexual assault charges, the incest of minor[s], et cetera, is that correct?

[Jablanofsky]: Yes, ma'am.

The Court: And did you have an opportunity to go over the guilty plea colloquy form, as well as the sexual offender guilty plea colloquy form, with your counsel?

[Jablanofsky]: Yeah.

The Court: Did you have enough time to discuss this decision with your counsel? And I note for the record you have Mr. Fioravanti as well as Mr. Gryscavage today.

[Jablanofsky]: Yes.

The Court: Sir, do you read, write and understand the English language?

[Jablanofsky]: Yes, ma'am.

The Court: Are you under the influence of any drugs, alcohol or medication that would affect your ability to understand what you're doing here today?

[Jablanofsky]: No.

**The Court: Is he on any medications while at the prison? I know he's been incarcerated for quite some time.**

**[Defense Counsel]: What are you on? Speak up a little.**

**[Jablanofsky]: Zoloft. One for anxiety medication, and then Seroquel, and something else for nightmares.**

**The Court: Nothing is preventing you from understanding what's happening here today, is that correct?**

**[Jablanofsky]: No, ma'am.**

The Court: And you went through the guilty plea colloquy form. I note that it has been over an hour that I have allowed you to speak with your counsel, after the lunch break now, to go through the colloquy form and all of the different forms that they had you fill out regarding the sex

offender forms and the rules and regulations, is that correct?

[Jablanofsky]: Yes, ma'am.

The Court: And did you initial each of those pages and sign the last page?

[Jablanofsky]: Yes.

The Court: If I asked you the same questions on the record that are on the guilty plea colloquy form, would your answers be the same as they are on the form?

[Jablanofsky]: Yeah.

N.T., 1/8/24, at 3-5 (emphasis added).

The court went on to explain Jablanofsky's jury trial rights, the Commonwealth's burden, the maximum penalties for the charges, and his appellate rights. *Id.* at 7-8. Counsel also asked Jablanofsky if he was "clear that you're not being forced to plead guilty and you signed that [guilty plea colloquy] freely and of your own free will, am I right?" Jablanofsky replied, "Yes." *Id.* at 12.

Jablanofsky agreed to the following facts presented by the Commonwealth:

> On January 13th of 2023, an officer with Lower South[ampton Township], took a report from the complainant, Angelica Garcia, regarding explicit images and videos that she had found on a cell phone. That cell phone belonged to [Jablanofsky] and was in the possession of Mr. Jablanofsky's son, Mikey Junior. Mikey Junior had that in a backpack that he takes back and forth between the two homes.
>
> Ms. Garcia looked in that phone and saw three images that depicted -- one depicted a female's breasts and two depicted her vagina. She recognized the female as the juvenile, JC. Due to the shorts that she was wearing, Ms.

- 3 -

Garcia was familiar with them. There was also the leg of a male depicted in those photos. And she recognized that leg to be Mr. Jablanofsky's by a tattoo and a scar that she saw.

There is also a video that she discovered. That was a video of an argument happening between JC and [Jablanofsky] in which at one point in time, [Jablanofsky] says: I'm your dad, get out of my face. And JC responded with: You want to act like my dad but you're fucking me every night. At that point, Mr. Jablanofsky said: Yeah, well that won't happen again.

Upon finding these, Ms. Garcia took them immediately to the police department. JC was then taken to the police department shortly thereafter and interviewed by Detective Heiduk.

She disclosed that in approximately early October of 2022, she and [Appellant] had moved in with other family members of [Appellant]. Shortly thereafter, a sexual relationship began between the two of them which included sexual intercourse. She indicated that this had happened on more than one occasion.

Mr. Jablanofsky is JC's biological father.

*Id.* at 14-15.

Two months after his plea, Jablanofsky filed a motion to withdraw his plea. *See* Motion to Withdraw Guilty Plea, filed 3/15/24. The court held a hearing on the motion, where the court heard from Jablanofsky's mother, Detective Eric Landamia, and Jablanofsky. *See* N.T., Motion to Withdraw Guilty Plea and Sentencing Hearing, 4/11/24.

Jablanofsky's mother testified that she text messaged Jablanofsky's attorney "that [Jablanofsky] had decided to rethink his plea" and asked if his attorney could visit him. *Id.* at 8-9. She said that Jablanofsky had written her "on February 14th [2024] that he felt he made a big mistake and he was

rethinking it[.]" *Id.* at 10. Jablanofsky also told his mother that the plea was a mistake because he "got scared, a lot of years were thrown at him. He was – he felt he was going to be found guilty and given the max sentence." *Id.* She testified that "one of the guards, the prison guards who knows [Jablanofsky], was in your jury selection and allowed to go to lunch with everybody else and come back, and [Jablanofsky] felt like that he could have, you know, tainted the rest of the people that were there." *Id.* at 10-11. She further stated that on the day of jury selection, Jablanofsky told her that he was innocent but pleaded guilty "out of fear that he would – that you as his judge would give him the harshest sentence if he didn't plead guilty." *Id.* at 12-13.

Jablanofsky testified that he maintained his innocence both when talking to police and after his preliminary hearing. *Id.* at 16-17, 18. He said that he did not have sexual intercourse with the victim and did not possess child pornography. *Id.* at 19-20. He explained that he pleaded guilty because his "anxiety rose to an extreme level. I felt like I was pressured extreme[ly]" and "the pressure of everything that day falling on me, I felt like it was the only option I had." *Id.* at 20, 24.

Detective Landamia testified about what he recovered from Jablanofsky's phone, including text messages and internet searches related to sexual intercourse with the victim.

The court denied the motion. It "d[id] not believe that there has been anything more than a bare assertion of innocence." *Id.* at 100. Regarding the

testimony from Jablanofsky's mother, the court found that "[t]he concern from her son that she indicated that was stated to her was the sentence, not that he was innocent." *Id.* It further noted that at the guilty plea hearing, the court went over the written colloquy and conducted an oral colloquy, and "[a]t no point did Mr. Jablanofsky say he was hesitant, or he was having anxiety and he didn't understand what was happening." *Id.* at 101.

The court imposed a term of five to 10 years' incarceration for incest of a minor followed by a consecutive term of 27 months to seven years' incarceration for EWOC. The court imposed no further penalty for the remaining crimes. This timely appeal followed.

Jablanofsky raises one issue: "Did the [trial] court err in failing to permit [Jablanofsky] to withdraw his guilty plea prior to sentencing?" Jablanofsky's Br. at 4 (answer of trial court omitted).

Jablanofsky claims that the trial court erred in denying his motion to withdraw his guilty plea because he presented "a supporting factual basis for his claim and has not merely presented a bald assertion of innocence[]." *Id.* at 16. He notes that he testified that he did not commit the crimes and that J.C.'s testimony at the preliminary hearing was "weak." *Id.* at 14. He points out that "she was unable to note where, when and how it happened." *Id.* He also points out that he pleaded guilty because his "anxiety rose to an extreme level" and he "felt like [he] was pressured extreme[ly] and made a mistake in changing [his] plea." *Id.* at 15 (quoting N.T., 4/11/24, at 89). Jablanofsky maintains that he "asserted his innocence from the beginning, contacting the

police and denying involvement in any wrongdoing" and calling his mother after the guilty plea expressing that he "wanted to re-think his guilty plea." *Id.* at 14, 15-16. Jablanofsky also claims that withdrawal of his plea "would not cause substantial prejudice" to the Commonwealth because no witnesses testified and there is no "evidence suggesting that the witnesses would be unavailable should the case proceed to trial." *Id.* at 17.

We review a court's denial of a pre-sentence motion to withdraw a guilty plea for an abuse of discretion. *See Commonwealth v. Islas*, 156 A.3d 1185, 1187 (Pa.Super. 2017). "At any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte*, the withdrawal of a plea of guilty[.]" Pa.R.Crim.P. 591(A).

When considering a pre-sentence motion to withdraw a guilty plea, a court must consider: 1) there is no an absolute right to withdraw a guilty plea; 2) the court has discretion to grant or deny the request; 3) the court should exercise its discretion in this regard liberally in the defendant's favor; and 4) any demonstration of a "fair-and-just reason" will support the grant of the request unless it would result in "substantial prejudice to the Commonwealth." *Commonwealth v. Norton*, 201 A.3d 112, 116 (Pa. 2019).

Where a defendant makes a claim of innocence that is at least plausible, the claim will suffice as a fair and just reason to withdraw the plea. *See Commonwealth v. Carrasquillo*, 115 A.3d 1284, 1292 (Pa. 2015). "Stated more broadly, 'the proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under

the circumstances, such that permitting withdrawal of the plea would promote fairness and justice." **Norton**, 201 A.3d at 120-21 (quoting **Carrasquillo**, 115 A.3d at 1292). "[T]rial courts have discretion to assess the plausibility of claims of innocence." **Id.** at 121. A plausible claim of innocence, supported by factual evidence in the record, provides "a fair and just reason for allowing pre-sentence withdrawal of a guilty plea." **Commonwealth v. Jamison**, 284 A.3d 501, 505 (Pa.Super. 2022). However, a bare assertion of innocence, by itself, is insufficient to require a court to grant a withdrawal request. **Carrasquillo**, 115 A.3d at 1285.

Here, the trial court determined that Jablanofsky's "reason for the withdrawal of his guilty plea was nothing more than a bare assertion of innocence" and that he "failed to offer a fair and just reason for the withdrawal of his guilty plea compared to the strong evidence from the Commonwealth[.]" Pa.R.A.P. 1925(a) Opinion, filed 7/5/24, at 16, 17. The court explained:

> Here, [Jablanofsky's] purported reason for the withdrawal of his guilty plea was nothing more than a bare assertion of innocence. The only evidence [Jablanofsky] offered to suggest that he never committed the charges offenses was the supposed "vagueness" in the victim's testimony during the preliminary hearing. This Court reviewed the transcript of the preliminary hearing. During her testimony, the victim explicitly said that she and [Jablanofsky] had sexual intercourse at least twice, once in October of 2022, and once in December of 2022. **See** Exhibit CS1 — Preliminary Hearing Transcript from February 2, 2023, at 9-10. The victim's only lack of recollection regarded when and how many times this abuse occurred. [Jablanofsky's] sole offering that this alone makes the victim's testimony at the preliminary hearing unreliable was

a poor attempt to convince this Court that there was a fair and just reason permitting him to withdraw his plea.

During his testimony, [Jablanofsky] contended that he never had any sexual contact with the victim, nor did he possess any child pornography on this phone. However, to the contrary, the Commonwealth offered overwhelming evidence that [Jablanofsky] committed the crimes charged. In addition to the preliminary hearing transcript where the victim states that she and [Jablanofsky] had sexual intercourse on at least two occasions, the Commonwealth, through the testimony of Detective Landamia, offered explicit photographs of the victim taken from [Jablanofsky's] phone, a video from [Jablanofsky's] phone w[h]ere he and the victim can be heard referring to having sexual intercourse, messages from [Jablanofsky's] phone to the victim where he clearly refers to sex between himself and the victim, and incriminating internet searches and website history regarding sexual relationships between fathers and daughters and the age of consent. The overwhelming strength of the Commonwealth's case makes [Jablanofsky's] miniscule showing of a reason to permit withdrawal of his plea somehow even weaker. [Jablanofsky] knew the evidence against him at the time he plead[ed] guilty, as he plead[ed] on the day of his trial and discovery was complete, and after hearing a recitation of the facts where the photographs, video, and statement from the victim were referenced.

*Id.* at 16.

The court did not abuse its discretion in denying Jablanofsky's pre-sentence motion to withdraw his plea. Our review of Jablanofsky's argument is hindered because Jablanofsky's written guilty plea colloquy – on which the trial court relied when accepting his guilty plea – is not in the certified record. While it is the duty of the lower court in the first instance to keep accurate records, it is the "appellant's responsibility to ensure that any relevant related matter be filed or made part of the original record," and the absence from the

certified record of materials necessary for appellate review of an issue constitutes waiver. ***Commonwealth v. Saranchak***, 675 A.2d 268, 275 (Pa. 1996).

In any case, the record supports the trial court's conclusion that Jablanofsky did not develop a factual basis to support his claim of innocence and instead made a bare assertion that he was innocent. For instance, Jablanofsky asserted his innocence by noting the victim's alleged vague testimony at the preliminary hearing. This argument, however, ignores that although the victim did not specify the dates of the abuse, she detailed at least two occasions of sexual intercourse with Jablanofsky. Additionally, the evidence included a video recording where the victim stated that Jablanofksy wanted to act like her dad but was having sex with her every night, and Jablanofsky responded "Yeah, well that won't happen *again*." N.T., Guilty Plea Hearing, at 15 (emphasis added). The court also considered the testimony of Jablanofsky's mother and determined that "[t]he concern from her son that she indicated that was stated to her was the sentence, not that he was innocent." N.T., Motion to Withdraw Guilty Plea and Sentencing Hearing at 100.

Certainly, Jablanofsky also claimed that he was having anxiety and felt pressured before entering his plea. However, this testimony is contradicted by the court's colloquy with Jablanofsky in which he told the court he was receiving medication to treat his anxiety, but it did not affect his ability to understand what he was doing. ***See*** N.T., Guilty Plea Hearing at 4. Moreover,

at the guilty plea hearing, he agreed that he was not forced to plead guilty and was entering the plea of his own free will. ***See id.*** 12; ***Commonwealth v. Jabbie***, 200 A.3d 500, 506 (Pa.Super. 2018) (stating a defendant is bound by statements made during plea colloquy and may not assert challenges contradictory to those statements).

Moreover, "[t]he mere fact that a defendant was 'under pressure' at the time he entered a guilty plea will not invalidate the plea, absent proof that he was incompetent at the time the plea was entered." ***Commonwealth v. Myers***, 642 A.2d 1103, 1107 (Pa.Super. 1994) (citation omitted). The trial court did not abuse its discretion in declining Jablanofsky's request to withdraw his plea. We therefore affirm the judgment of sentence. ***See Carrasquillo***, 115 A.3d at 1293 n.9 (declining to address prejudice to Commonwealth since defendant failed to establish a plausible claim of innocence).

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/23/2025

- 11 -