J-S36022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
           :         PENNSYLVANIA
           :
      v.               :
           :
           :
TEVIN THOMAS          :
           :
    Appellant      :     No. 1202 EDA 2017

Appeal from the Judgment of Sentence April 11, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0014120-2014,
CP-51-CR-0014121-2014

BEFORE: GANTMAN, P.J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY DUBOW, J.:           **FILED NOVEMBER 27, 2018**

Appellant, Tevin Thomas, appeals from the Judgment of Sentence of 20 to 40 years' incarceration imposed after a jury convicted him of two counts each of Attempted Murder and Aggravated Assault, and one count each of Carrying a Firearm Without a License and Carrying a Firearm in Public in Philadelphia.[1] Appellant challenges the sufficiency and weight of the evidence in support of his convictions, and the discretionary aspects of his sentence. After careful review, we affirm on the basis of the trial court's September 12, 2017 Pa.R.A.P. 1925(a) Opinion.

---

[1] 18 Pa.C.S. §§ 901(a); 2502(a); 2702(a); 6106(a)(1); and 6108, respectively. The Commonwealth also charged Appellant with two counts of each of Simple Assault and Recklessly Endangering Another Person, but *nolle prossed* those charges before trial. 18 Pa.C.S. §§ 2701 and 2705, respectively.

The relevant facts, as gleaned from the certified record, are as follows. On March 25, 2014, at around 5:30 PM, Philadelphia Police Officers Christopher Daukaus, Michael Inemer, George Lane, and Stephen Murray were responding to an incident on the 4800 block of Palethorp Street in Philadelphia when they heard gunshots nearby, coming from the direction of the intersection of Louden and Mascher Streets. The officers ran towards the gunshots, and, at the intersection of Palethrop and Louden Streets, met two armed men, later identified as Paris Nicholson and Demetrius Dickens.

Dickens complied with police orders to drop his weapon, and Officers Murray and Inemer placed him under arrest. Dickens told police that he and Nicholson had been fleeing a shooting at the corner. Officers Daukus and Lane followed Nicholson as he attempted to escape. While in flight, Nicholson turned and shot at the officers. Officer Lane returned fire, exchanging approximately 15 to 20 shots with Nicholson. The officers then apprehended Nicholson and placed him under arrest. Police recovered firearms from both Nicholson and Dickens.[2]

A witness reported to Officers Daukus and Lane that a man had been shot around the corner, on Mascher Street. Officer Lane proceeded there, and he and additional officers began looking for the unidentified injured male.

Officer Lane discovered an injured man, later identified as Appellant, sitting on a wall at 4761 Mascher Street. Officer Lane also recovered a Glock

---

[2] The Commonwealth prosecuted Nicholson and Dickens both of whom pleaded guilty to multiple offenses arising from this incident.

.9 millimeter semi-automatic pistol with an extended, 33-shot magazine from the real wheel well of a nearby minivan. Police arrested Appellant at the scene and an ambulance transported him to the hospital to obtain treatment for a gunshot wound on his leg.

Appellant's jury trial on the above charges commenced on January 5, 2016. At trial, the Commonwealth presented the testimony of eye witnesses Carlos Cruz, Adalia Carlton, Robert Fuentes, and Luis Miranda;[3] Officers Lane, Daukaus, and Inemer; Officer Peter Brendlmaier, one of the patrol officers dispatched to the incident; Officer Raymond Andrejczak, a member of the Firearms Identification Unit; Officer Robert Flade, a member of the Crime Scene Unit; Detectives James Perfidio, Francis Green, and Glenn MacClain; Sergeant Mark Hiller; Gamal Emira, a certified forensic science and gunshot residue expert; and Bryne Strother, a certified DNA analysis and forensic expert. The court also admitted into evidence surveillance video from the area near the intersection of Louden and Mascher Streets that captured the shoot-out between Appellant, Nicholson, and Dickens.

Appellant did not testify on his own behalf. His counsel did, however, argue in both his opening and closing arguments that Appellant had been acting in self-defense when he fired 15 shots from his extended magazine weapon.

_____

[3] Luis Miranda is also a Philadelphia police officer, but was off-duty at the time of the crime and testified as a civilian.

Following trial, on January 12, 2016, the jury convicted Appellant of the above offenses. The trial court ordered Appellant to undergo a psychological evaluation and the preparation of a Presentence Investigation ("PSI") Report prior to sentencing.

On April 11, 2016, after hearing testimony and argument from counsel, and reviewing the PSI Report, the court sentenced Appellant to an aggregate term of 20 to 40 years' incarceration,[4] including two consecutive terms in the aggravated range of 10 to 20 years' incarceration on each Attempted Murder conviction.[5] Appellant filed a Post-Sentence Motion on April 19, 2016, in which he challenged the weight of the evidence, as well as the discretionary aspects of his sentence. On May 10, 2016, the court denied Appellant's Motion.

Appellant initially failed to file a timely Notice of Appeal. Following the reinstatement of his direct appeal rights, however, Appellant filed the instant appeal from his Judgment of Sentence. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following three issues on appeal:

1. Is the evidence sufficient as a matter of law to support the convictions for [A]ttempted [M]urder and [A]ggravated

---

[4] In addition, the court sentenced Appellant to a term of 2 to 4 years' and 1 to 2 years' for his Carrying a Firearm Without a License and Carrying a Firearm in Public in Philadelphia convictions, respectively. The court ordered Appellant's firearms sentences to run concurrently. Appellant's Aggravated Assault convictions merged with his Attempted Murder convictions for purposes of sentencing.

[5] The court concluded that the deadly weapons enhancement, 204 Pa. Code § 303.17(b), applied and calculated Appellant's sentence accordingly.

- 4 -

[A]ssault where the evidence of record did not establish beyond a reasonable doubt that [Appellant] was not justified (under 18 Pa.C.S.[] § 505?

2. Is the verdict of guilty with respect to the charges of [A]ttempted [M]urder and [A]ggravated [A]ssault against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice based upon the evidence of record in these matters?

3. Is the sentence imposed unduly harsh and greater than that which would be consistent with protection of the public, the gravity of [Appellant's] conduct as it relates to the impact on the life of others in the community, and the rehabilitative needs of [Appellant], and did the trial court take into account all mitigating and relevant and necessary factors to be considered by a sentencing court, as set forth in the [P]ost-[S]entence [M]otion filed by [Appellant] (including [Appellant's] age[,] rehabilitative needs, and defensive actions taken in response to the complainants' unlawful acts)?

Appellant's Brief at 8-9.

## Sufficiency of the Evidence

In his first issue, Appellant challenges the sufficiency of the evidence supporting his Attempted Murder and Aggravated Assault convictions. He claims that he was acting in self-defense when he discharged his weapon. He asserts that the testimonial, video, and forensic evidence overwhelmingly establish that his actions were justifiable in response to Nicholson's and Dickens's attempts to kill him. *Id.* at 29. He avers that "simply distancing himself from Dickens and Nicholson was, in fact, insufficient to protect [himself] from the serious bodily injury which that pair was actively trying to inflict upon him with their handguns." *Id.* at 31. He infers from the fact that Nicholson emptied his gun and Dickens fired 22 of 23 rounds that the men "were determined to continue their assault until completely prevented from

- 5 -

doing so[,]" and that, therefore, the force he used was necessary to protect himself against death or serious bodily injury. *Id.*

Appellant relies on the justification statute set forth in our Crimes Code that permits the "use of force upon or toward another person . . . when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force[.]" 18 Pa.C.S. § 505(a). In *Commonwealth v. Torres*, 766 A.2d 342 (Pa. 2001), our Supreme Court explained:

> The use of force against a person is justified when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person. *See* 18 Pa.C.S. § 505(a). When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt. While there is no burden on a defendant to prove the claim, before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

*Id.* at 345 (some citations omitted).

To disprove a self-defense claim, the Commonwealth is required to prove at least one of the following: "1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety." *Commonwealth v. Hammond*, 953 A.2d 544, 559 (Pa. Super. 2008).

- 6 -

In connection with his sufficiency challenge, Appellant avers that, since he acted for the permitted purpose of self-defense, the Commonwealth failed to offer sufficient evidence supporting his Attempted Murder and Aggravated Assault convictions. Appellant's Brief at 26.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citations omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Id.* "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.*

Appellant challenges his convictions of Attempted Murder and Aggravated Assault. Under the Crimes Code, a defendant "commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a).

"A person may be convicted of attempted murder 'if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act.'" **Commonwealth v. Dale**, 836 A.2d 150, 153 (Pa. Super. 2003) (citations omitted). **See** 18 Pa.C.S. §§ 901, 2502. "The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime." **Commonwealth v. Gilliam**, 417 A.2d 1203, 1205 (Pa. Super. 1980). "The *mens rea* required for first-degree murder, specific intent to kill, may be established solely from circumstantial evidence." **Commonwealth v. Schoff**, 911 A.2d 147, 160 (Pa. Super. 2006). "[T]he law permits the factfinder to infer that one intends the natural and probable consequences of his acts[.]" **Commonwealth v. Gease**, 696 A.2d 130, 133 (Pa. 1997). "The offense of attempt with intent to kill is completed by the discharging of a firearm at a person with intent to kill, despite the fortuitous circumstances that no injury is suffered." **Commonwealth v. Mapp**, 335 A.2d 779, 781 (Pa. Super. 1975).

Under Pennsylvania law, "a person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly[,] or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). Intent to cause serious bodily injury can be proven by wholly circumstantial evidence, and may be inferred from acts or conduct, or from attendant

circumstances. ***Commonwealth v. Holley***, 945 A.2d 241, 247 (Pa. Super. 2008).

The Honorable Charles A. Ehrlich, who presided over the proceedings in this case, has authored a comprehensive, thorough, and well-reasoned Opinion, citing to the record, including the Notes of Testimony, as well as the relevant case law, in addressing Appellant's challenge to the sufficiency of the evidence and his unsuccessful self-defense claim. After a careful review of the parties' arguments and the record, we adopt the trial court's Opinion as to this issue as our own, and conclude that Appellant's first issue warrants no relief. ***See*** Trial Ct. Op., 9/12/17, at 3-11 (concluding, based on the extensive evidence, that: (1) the Commonwealth presented sufficient evidence to support Appellant's convictions of Attempted Murder and Aggravated Assault; and (2) the jury reasonably inferred from the evidence, evaluated in the light most favorable to the Commonwealth, that Appellant "provoked or continued the use of force, when he continued firing at" Nicholson and Dickens, and that Appellant could have safely retreated but failed to do so).

**Weight of the Evidence**

In his second issue, Appellant challenges the weight of the evidence supporting his Attempted Murder and Aggravated Assault convictions.

A trial court will not grant relief on a weight of the evidence claim unless the verdict is so contrary to the evidence as to shock one's sense of justice. ***Commonwealth v. West***, 937 A.2d 516, 521 (Pa. Super. 2007). An appellate court will not substitute its assessment of credibility for that of the

finder of fact. ***Commonwealth v. Manley***, 985 A.2d 256, 262 (Pa. Super. 2009).

Further, this Court may not consider the underlying question of whether the verdict is against the weight of the evidence; instead, we are limited to evaluating only the trial court's exercise of discretion in denying that claim. ***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a **palpable abuse of discretion**[.]" ***Id.*** (citations omitted, emphasis in original). The trial court's denial of a weight claim is the least assailable of its rulings. ***Commonwealth v. Diggs***, 949 A.2d 873, 879-80 (Pa. 2008). ***See Commonwealth v. Morgan***, 913 A.2d 906, 909 (Pa. Super. 2006) (stating that because the trial court is in best position to view the evidence presented, an appellate court will give that court "the utmost consideration" when reviewing its weight determination).

Judge Ehrlich's Opinion as to Appellant's weight of the evidence claim is comprehensive, thorough, and well-reasoned. Thus, after a careful review of the parties' arguments and the record, we adopt the trial court's Opinion as to this issue as our own, and conclude that Appellant's weight claim warrants no relief. ***See*** Trial Ct. Op. at 11-13 (concluding that the jury's decision to credit the testimony of the various civilian and expert witnesses and police officers, and to rely on the physical evidence, does not "shock one's sense of justice").

**Discretionary Aspects of Sentencing**

In his final issue, Appellant challenges the imposition of an aggregate aggravated range sentence. This claim challenges the discretionary aspects of his sentence.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right, and a challenge in this regard is properly viewed as a petition for allowance of appeal. *See* 42 Pa.C.S. § 9781(b); *Commonwealth v. Tuladziecki*, 522 A.2d 17, 18 (Pa. 1987); *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must satisfy a four-part test. We evaluate: (1) whether Appellant filed a timely notice of appeal; (2) whether Appellant preserved the issue at sentencing or in a motion to reconsider and modify sentence; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the Sentencing Code. *Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 725 (Pa. Super. 2013). "An appellant must articulate the reasons the sentencing court's actions violated the [S]entencing [C]ode." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010).

Here, Appellant timely appealed from his Judgment of Sentence and he preserved his challenge to the discretionary aspects of his sentence in a Post-Sentence Motion and in a Pa.R.A.P. 2119(f) Statement in his Brief to this

Court. Thus, we consider whether Appellant has presented this Court with a substantial question for review.

It is well-settled that:

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Moury*, 992 A.2d at 170 (citation and quotation marks omitted).

Appellant concedes that his sentence is within the guideline range but claims that it is excessive because the court sentenced him to aggravated range sentences for his Attempted Murder convictions even though it had already applied the deadly weapons sentencing enhancement. He also challenges the imposition of consecutive, rather than concurrent, sentences for his Attempted Murder convictions. Appellant's Brief at 44, 48. He also asserts that the aggravated range sentence is excessive because the court failed to take into consideration mitigating factors. *Id.* at 52.

With regard to the imposition of consecutive sentences, this Court has held:

A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. *Commonwealth v. Mastromarino*, 2 A.3d 581, 587 (Pa. Super. 2010)[.] Rather, the imposition of consecutive rather than concurrent sentences will present a substantial question in only "the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of

imprisonment." ***Commonwealth v. Lamonda***, 52 A.3d 365, 372 (Pa. Super. 2012)[(*en banc*)].

> [An appellant] **may** raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

***Commonwealth v. Swope***, 123 A.3d 333, 338-39 (Pa. Super. 2015) (quotation omitted and emphasis in original).

In the case sub judice, Appellant's challenge to the imposition of consecutive sentences does not raise a substantial question permitting our review. ***Mastromarino***, 2 A.3d at 587. Thus, we decline to review its merits.

However, "[w]e have held that a substantial question is raised where an appellant alleges the sentencing court erred by imposing an aggravated range sentence without consideration of mitigating circumstances." ***Commonwealth v. Bowen***, 55 A.3d 1254, 1263 (Pa. Super. 2012). Thus, we have reviewed the merits of Appellant's claim that his aggravated range sentence imposed was excessive and an abuse of the trial court's discretion.

After a careful review of the parties' arguments and the record, we conclude that this issue warrants no relief, and we adopt the trial court's comprehensive Opinion as to this issue as our own. ***See*** Trial Ct. Op at 15-18 (explaining that the court considered factors including the PSI Report, mental health report, Appellant's age, prior criminal history, rehabilitative needs, and alleged defensive actions when sentencing him, and concluding

that Appellant's sentence did not violate the fundamental norms underlying the sentencing process).

Judgment of Sentence affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/27/18

- 14 -

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

| Commonwealth of Pennsylvania | : | CP-51-CR-0014120-2014 |
| | | CP-51-CR-0014121-2014 |
| | : | |
| v. | | |
| | : | |
| | | SUPERIOR COURT |
| Tevin Thomas | : | NO. 1202 EDA 2017 |

CP-51-CR-0014120-2014 Comm v Thomas, Tevin
Opinion



8000560141

OPINION

Ehrlich, J.

FILED

SEP 1 2 2017

Office of Judicial Records
Appeals/Post Trial

Tevin Thomas, hereinafter Appellant, was found guilty of attempted murder, aggravated

assault, and two separate violations of the Uniform Firearms Act following a jury trial on January

12, 2016.[1] On April 11, 2016, Appellant was sentenced to an aggregate term of twenty to forty

years' of incarceration.

A timely appeal followed  On appeal, Appellant avers three points of error:

1.  The evidence was insufficient as a matter of law to convict defendant of the crime of
    attempted murder and aggravated assault because:

    - The evidence did not establish beyond a reasonable doubt that defendant did not
      act with justification and in self-defense where;
        o  It is undisputed that complainant Paris Nicholson unlawfully fired a gun at
           defendant;
        o  It is undisputed that complainant Demetrius Dickens unlawfully fired a gun
           at defendant;
        o  It is undisputed that complainant Paris Nicholson unlawfully and without
           provocation fired a gun at police,
        o  It is undisputed that defendant was, in fact, shot by one of the complainants;
        o  It is undisputed that defendant did not shoot either complainant;
        o  It is undisputed that defendant only fired one-half of the bullets in his
           firearm;

---

[1] 18 Pa.C S A  §901, §2702, §6106(a)(1), and §6108, respectively

- o It is undisputed that complainant Paris Nicholson and Demetrius Dickens are not peace officers;
- o It is undisputed that complainant Paris Nicholson and Demetrius Dickens were not on property lawfully possessed by them at the time of the incident
- o There is no evidence that defendant provoked the use of force by complainant Paris Nicholson or Demetrius Dickens;
- o The evidence establishes that defendant could not retreat with complete safety because complainant Paris Nicholson and/or Demetrius Dickens were firing at defendant even as complainants were walking backward away from defendant; and,
- o It is undisputed that complainant Paris Nicholson fired a gun at police as he ran away from the officers.

2. The verdict of guilty with respect to the charges of attempted murder and aggravated assault is against the weight of the evidence and is so contrary to the evidence that it shocks one's sense of justice insofar as;

- • The evidence establishes that defendant acted with justification and in self-defense where;
  - o It is undisputed that complainant Paris Nicholson unlawfully fired a gun at defendant;
  - o It is undisputed that complainant Demetrius Dickens unlawfully fired a gun at defendant;
  - o It is undisputed that complainant Paris Nicholson unlawfully and without provocation fired a gun at police,
  - o It is undisputed that defendant was, in fact, shot by one of the complainants;
  - o It is undisputed that defendant did not shoot either complainant,
  - o It is undisputed that defendant only fired one-half of the bullets in his firearm;
  - o It is undisputed that complainant Paris Nicholson and Demetrius Dickens are not peace officers;
  - o It is undisputed that complainant Paris Nicholson and Demetrius Dickens were not on property lawfully possessed by them at the time of the incident
  - o There is no evidence that defendant provoked the use of force by complainant Paris Nicholson or Demetrius Dickens;
  - o The evidence establishes that defendant could not retreat with complete safety because complainant Paris Nicholson and/or Demetrius Dickens were firing at defendant even as complainants were walking backward away from defendant; and,

3. The sentence imposed is unduly harsh and excessive as it fails to take into account all mitigating and relevant and necessary factors to be considered by a sentencing court, as set forth in the post-sentence motion filed by defendant (including defendant's age rehabilitative needs, and defensive actions taken in response to the complainants' unlawful acts), and confinement in a state correctional facility for the term imposed is not the least restrictive sentence necessary to effectuate the aims of the Pennsylvania's

2

sentencing laws. The sentence imposed is greater than that which would be consistent with protection of the public, the gravity of defendant's conduct as it related to the impact on the life of others in the community, and the rehabilitative needs of defendant

Appellant's Pa.R.A.P. 1925(b) Statement.

As will be discussed below, these claims are without merit. Accordingly, no relief is due.

## The Evidence

On March 25, 2014, at around 5:30 p.m., Philadelphia Police Officer Christopher Daukaus, George Lane, Michael Inemer, and Murray were on the 4800 block of Palethorp Street when they heard gunshots coming from the direction of the intersection of Mauscher Street and Louden Street Notes of Testimony ("N.T."), 01/07/2016, at 8-10 All four officers started running toward the gunshots *Id* The officers came in contact with two males, later identified as Paris Nicholson and Demetrius Dickens, at the intersection of Palethorp and Louden Street. *Id*

Upon seeing police, Demetrius Dickens dropped his firearm and put his hands up following the officers' verbal commands. Police Officer Murray and Officer Inemer secured Dickens and placed him under arrest. N T., 01/08/2016, at 40-41. The officers recovered a black 40 caliber Glock 35, and one 22-round extended magazine loaded with one live round from the ground near Dickens. *Id* at 40-42. After Dickens was apprehended, he told Officer Inemer "me and Paris [Nicholson] are running from a shooting down from the corner." *Id* at 49

Officers Daukus and Officer Lane followed Paris Nicholson as he was attempting to flee *Id* at 57. While in pursuit, Officer Inemer stated Nicholson turned and shot at the officers. Officer Lane then returned fire. *Id* at 58-60. Officer Inemer testified that approximately 15 to 20 shots were exchanged between Officer Lane and Nicholson. *Id* at 60 Nicholson was quickly immobilized and secured by Officer Lane. N.T., 01/07/2016, at 14-15. A black semiautomatic handgun with one empty magazine was recovered from Nicholson. *Id* at 25 As Officer Daukaus radioed the other police officers, a Hispanic male came running from the intersection of Mascher

3

and Louden Street, and stated that a male had been shot on the 4700 block of Mascher Street. *Id* at 14-16. Officer Lane proceeded to the 4700 block of Mascher Street. *Id.* at 19. Officer Daukaus, who was with Nicholson, was joined by two more officers in search of the unidentified male *Id*

Officer Lane was the first to find Appellant sitting on a wall at 4761 Mascher Street. Officer Lane recovered a firearm from the rear wheel well of a nearby minivan. *Id* at 86-88. It was later discovered that Appellant did not have a valid license to carry a firearm, and was not the registered owner of the firearm. N.T., 01/11/2016, at 8. Given Appellant's gunshot wound in his leg, he was transported via ambulance to the hospital for treatment. N.T., 01/06/2016, at 93.

In their testimony, various witnesses supplemented and corroborated the police officers' testimony regarding the incident. Ms. Adalia Carlton, who lives on the 4800 block of Mascher Street, heard "two gunshots and then a lot of gunshots" from inside her apartment around 5.30 p.m. on March 25, 2014. *Id.* at 56-57. After hearing the shots, Ms. Carlton looked out her window and saw a "black man in the street sitting on his buttocks with a gun in his hand asking someone to help him." *Id.* at 59. She was able to recall the clothing the man was wearing. *Id* at 66. The man was later identified as Appellant.

Luis Miranda also lives in the area of 4800 Mascher Street. He called 911 after hearing gunshots at around 5:30 p.m. on March, 25 2014. Mr. Miranda stated he heard more than one gun being fired simultaneously. *Id* at 163-64. Mr. Miranda looked through his window and saw Appellant shooting and being shot at, fall and get up multiple times, and eventually sit down at 4767 Mascher Street. *Id* at 166-67. Mr. Miranda was able to identify Appellant's black jacket, jeans and hoodie from that day. *Id* at 170-71.

Carlos Cruz, a 40-year resident of the 4800 block of Mascher Street, said he heard gunshots on the day in question. After going outside, he saw Appellant in the middle of the street walking

4

down Louden Street and firing a gun with a large magazine. N.T., 01/06/17, at 43-48. Mr. Cruz observed Appellant get shot and fall to the ground. When it appeared to be safe, Mr. Cruz walked over to the Appellant to help him. *Id.* at 44-47. Eventually Mr. Cruz waved over nearby police officers for further assistance. *Id* at 50. As he was assisting Appellant, Mr. Cruz observed a gun in the rear well of a nearby Dodge Caravan. *Id* at 48-51.

Robert Fuentes regularly drives through the 4800 block of Mascher Street on his way to and from work. On March 25, 2014 he was driving on Louden Street, when he heard gunshots rapidly sped up in frequency. N.T. 01/0/2016, at 7. While Mr. Fuentes was stopped at a stop sign, he saw two males, wearing hoodies and dark clothes, walk backwards in the westward direction on Louden Street. Both men had guns in their hands and were shooting in the eastward direction. *Id* at 8. The men eventually disappeared around the corner *Id* Mr. Fuentes then saw Appellant, walking westward on Louden Street also firing a gun *Id* He witnessed Appellant fall to the ground with the gun in his hand, get up, and pull himself to the side of the street. *Id* at 9 Mr. Fuentes was not sure if Appellant had the gun in his hand when he moved to the side of the street, however no gun was later observed where he originally fell. *Id.* at 10

Detective James Perfido recovered surveillance camera footage from 166 Louden Street, 187 Louden Street, and 4800 Mascher Street N T , 01/07/2016, at 134. The footage was used to identify Appellant and corroborate the eyewitness accounts. *Id* at 137. For purposes of trial, the footage was compiled into one videotape. *Id* at 136. The tape from Louden Street shows Paris Nicholson and Demetrius Dickens running westbound on Louden Street from Mascher Street. *Id* at 138-39 The video shows a nearby car's windshield get struck by a bullet and shatter on Louden Steet in close proximity to Paris Nicholson who is seen running westbound with his back to the gunfire. *Id* at 138 Detective Perfido testified that Appellant is seen shooting at Nicholson in the

videotape and that it was Appellant's gunfire that struck the windshield of the neighboring car. *Id* at 157. Dickens is also spotted running westbound on Louden Street and firing a gun eastbound in the direction of Mascher and Loudon Street. *Id.* at 138  In the footage from 4800 Mascher St., Appellant is seen advancing towards Nicholson and Dickens, as the pair run away from Appellant. *Id* at 139.

Mr. Gamal Emira, certified forensic science and gunshot residue expert, analyzed Appellant's clothing and found 42 particles of gun-shot residue. N.T., 01/11/17, at 26-27. Mr. Emira characterized 42 particles as an "above average" amount of gunshot residue, and the amount is consistent with someone firing a firearm. *Id* at 27-28

Ms Bryne Strother, certified DNA analysis and forensic science expert, testified that the analysis of the DNA from all three handguns recovered was inconclusive as to origin. N.T., 01/08/2016, at 70  Over 68 pieces of ballistic evidence were recovered on the first day of the investigation  However every bullet, from the fired shell casings, was not accounted for. *Id* at 128  Officer Andrejczak, who is a certified expert in firearms identification, stated every piece of ballistic evidence retrieved in the investigation appeared to be fired from a handgun that was recovered from the scene. *Id* at 81.

## Discussion

### *Sufficiency of the Evidence*

The standard of review of sufficiency claims is well-settled:

> In reviewing a claim regarding the sufficiency of the evidence, an appellate court must determine whether the evidence was sufficient to allow the fact finder to find every element of the crimes charged beyond a reasonable doubt  In doing so, a reviewing court views all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. Furthermore, in applying this standard, the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence.  When performing its review, an appellate court should evaluate the entire record and all evidence received is to be considered, whether or

6

not the trial court's rulings thereon were correct. Additionally, we note that the trier of fact, while passing on the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence.

*Commonwealth v Galvin*, 985 A.2d 783, 789 (Pa 2009) (internal citations omitted).

Specifically, the Appellant challenges the sufficiency of the evidence as it relates to his conviction of attempted murder and aggravated assault

The relevant portions of the attempted murder statute are as follows:

§ 901. Criminal attempt

(a) Definition of attempt.--A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.

18 Pa. C.S. §§ 901(a)

A person can be found guilty of attempted murder, "if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act." *Commonwealth v Hobson*, 604 A.2d 717, 719 (Pa. Super. 1992) (quoting *Commonwealth v Ford*, 461 A.2d 1281, 1286 (Pa Super. 1983)). The specific intent necessary for a murder conviction is "malice aforethought or simply, malice." *Hobson*, 604 A.2d at 719. Malice is defined as "either of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, indicating unjustified disregard for the probability of death or great bodily harm." *Commonwealth v Hobson*, 604 A.2d 717, 719 (Pa. Super. 1992) (quoting *Commonwealth v Kersten*, 482 A.2d 600, 604 (Pa. Super. 1984)).

Use of a deadly weapon on a vital part of the complainant's body is enough for a jury to properly infer an intent to kill. *Hobson*, 604 A 2d at 720. "The offense of attempt with intent to kill is completed by the discharging of a firearm at a person with intent to kill, despite the fortuitous circumstances that no injury is suffered." *Commonwealth v Mapp*, 335 A.2d 779, 781 (Pa. Super.

7

1975); *See Commonwealth v White*, 323 A 2d 757, 759 (Pa. Super. 1974) (where the court found that defendant's pointing and firing of a gun in the direction of several neighbors with the bullet narrowly missing a neighbor's head was sufficient to permit the trier of fact to infer that appellant possessed the requisite intent to commit murder).

Appellant's claim that the evidence was insufficient to convict Appellant of attempted murder and aggravated assault is meritless. Appellant was seen by multiple witnesses brandishing a gun and shooting at Paris Nicholson and Demetrius Dickens. Officer Luis Miranda, Carlos Cruz, and Robert Fuentes all testified to witnessing Appellant advance towards the men, point and discharge a firearm in their direction. Clothing recovered from Appellant matched the witnesses' description of the assailant. In addition to the 68 pieces of ballistics evidence recovered from the scene, Appellant's clothing was covered with an "above average" amount of gunshot residue The surveillance video also corroborates the testimony of the various witnesses. Appellant is seen chasing after Dickens and Nicholson, while brandishing and discharging a firearm. This act is certainly indicative of a "substantial step" toward the commission of a killing.

As stated in *Hobson*, Appellant's actions are indicative of a recklessness of consequences that show an "unjustified disregard for the probability of death or great bodily harm." Appellant's actions were rife with the requisite intent of "malice" necessary for a conviction of attempted murder. Further, as found in *White*, Appellant's actions illustrate his specific intent to kill, as he pursued two specific people while discharging a firearm in the streets of Philadelphia. Here, similarly to *White*, Appellant's gunfire narrowly missed the body of Nicholson, as seen in the surveillance footage provided by the Commonwealth. As in *Mapp*, the mere "fortuitous circumstances that no injury [was] suffered" by either Dickens or Nicholson as a result of

8

Appellant's actions is irrelevant to establishing a specific intent to kill. It is enough that Appellant discharged a weapon aimed at the man, to establish the specific the intent to kill

Additionally, there was no testimony presented that conflicted with the eyewitnesses' testimony. In the light most favorable to the Commonwealth as the verdict winner, the evidence was sufficient to convict Appellant of attempted murder.

Similarly, the Defendant argues that the evidence is insufficient to convict him of aggravated assault. Under Pennsylvania law, aggravated assault, a felony of the first degree, is proven beyond a reasonable doubt if the elements set forth by statute are met. Specifically, "[a] person is guilty of aggravated assault if he... attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life...." 18 Pa.C.S. § 2702(a)(1). Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa C S.A. §2301. Where the complainant does not suffer serious bodily injury, the Commonwealth has to prove that Appellant acted with the specific intent to cause the injury. *Commonwealth v Holley*, 945 A.2d 241, 247 (Pa. Super. 2008) Intent to cause serious bodily injury can be proven by wholly circumstantial evidence, and may be inferred from acts or conduct, or from attendant circumstances. *Id*

The elements of aggravated assault are necessarily included in the offense of attempted murder and merge with it for sentencing purposes. Every element of aggravated assault is subsumed in the elements of attempted murder. *Commonwealth v. Anderson*, 650 A.2d 20, 24 (1994). Since the fact-finder determined that there was sufficient evidence to conclude that each element of the offense of attempted murder was satisfied beyond a reasonable doubt, it follows

that each element of the offense of aggravated assault is also satisfied. Thus, Appellant's claim regarding the insufficiency of evidence for aggravated assault must also fail.

Furthermore, Appellant's claim that the evidence did not disprove beyond a reasonable doubt a claim of self-defense is meritless

To prove a claim of self-defense, evidence establishing the following three elements is required

> a) the actor was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force; b) the actor must have reasonably believed that he was in imminent danger of death or serious bodily injury, and that there was a necessity to use such force in order to save himself or others therefrom; and c) the actor did not violate any duty to retreat or to avoid the danger.

*Commonwealth v Smith*, 97 A.3d 782, 787 (Pa. Super. 2014) (quoting *Commonwealth v Harris*, 665 A.2d 1172, 1174 (Pa. 1995)).

During trial, the defendant has no burden to prove self-defense, but "before the defense is properly at issue, there must be some evidence, from whatever source, to justify such a finding." *Commonwealth v Mouzen*, 53 A.3d 738, 740-41, (quoting *Commonwealth v Black*, 376 A 2d 627, 630 (1977)) (internal quotations omitted) "Once the question is properly raised, the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense." *Id.* The Commonwealth is only required to prove at least one of the following beyond a reasonable doubt: "(1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety " *Commonwealth v Hammond*, 953 A.2d 544, 559 (Pa Super. 2008). Right of self-defense is limited by duty to retreat if possible to do so, rather than take the life of another person. *Commonwealth v Collazo*, 180 A.2d 903, 907 (Pa. 1962). However, a "defendant claiming self-defense or defense of others does not have a duty to retreat from his dwelling except with limited exceptions, including an instance in which the defendant or the individual defendant acts to defend is the initial aggressor." *Commonwealth v. Hornberger*, 74 A.3d 279 (Pa. Super. 2013). *See Commonwealth v Derby*, 451

10

Pa.Super. 100, 678 A.2d 784 (1996) (holding that actor is not required to retreat from his dwelling unless he is initial aggressor).

In the instant case, the jury as fact-finder found that Appellant was not acting in self-defense. Some evidence was presented that Appellant may have reasonably believed that he was in imminent danger of death of serious bodily injury. However, no evidence established Appellant was "free from fault in provoking or continuing the difficulty which resulted in the use of deadly force " *Smith*, at 787. Witness testimony and surveillance camera footage did not support this claim.

The Commonwealth presented surveillance footage that showed a car window shatter in very close proximity to Nicholson from a bullet fired by Appellant. Appellant was observed chasing Nicholson and Dickens, and discharging a weapon at them. When evaluated in the light most favorable to the Commonwealth, it is a reasonable inference that Appellant "provoked or continued the use of force," when he continued firing at the retreating complainants. Similarly, Appellant violated his duty to retreat at this moment, since Appellant could have safely retreated. Appellant's duty in these circumstances was to remove himself from the periphery of danger, not to advance closer to it.

Therefore, based on the evidence, the Commonwealth proved beyond a reasonable doubt that the defendant did not act with justification and in self-defense.

*Weight of the Evidence*

Appellant contends that the verdict was against the weight of the evidence. This claim should fail because the standard of review for evaluating a weight-of-the-evidence claim is well established and very narrow. *Commonwealth v. Champney*, 832 A 2d 403, 407 (Pa. 2003). Determining the weight of the evidence is reserved exclusively for the finder of fact. *Id.* at 408.

11

The finder of fact is "free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Id.* An appellate court "may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice." *Id* Because the trial judge is in the best position to view the evidence presented, an appellate court will give that judge the utmost consideration when reviewing the court's determination on whether the verdict is against the weight of the evidence *Commonwealth v Morgan*, 913 A.2d 906 (Pa. Super 2006).

A "true weight-of-the-evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v Charlton*, 902 A.2d 554, 561 (Pa. Super. 2006). The jury is always free to determine which testimony to believe and how much weight to give testimony. *Commonwealth v Moore*, 648 A.2d 331, 333 (Pa Super. 1994). A new criminal trial should not be granted because of a conflict in the testimony or because the judge, on the same facts, may have arrived at a different conclusion. *Commonwealth v. Widmer*, 744 A.2d 745, 752 (Pa. 2000).

To be against the weight of the evidence, the verdict must shock one's sense of justice or be an abuse of discretion by the trial court *Id.* As described *supra*, the evidence presented at trial was sufficient to support a conviction for attempted murder, aggravated assault and two separate violations of the Uniform Firearms Act With that analysis in mind, one must consider whether the verdict in this case shocks one's sense of justice or represents an abuse of discretion. Given the strength and consistency of the testimony presented by the Commonwealth's witnesses, it does neither.

In the instant case, the jury chose to credit the testimony of the eyewitnesses, the police officers and detectives investigating the case. The evidence found credible by the jury was clearly presented The testimony of several eyewitnesses was consistent and told a corroborated story.

12

The eyewitness testimony was substantiated by the testimony of the various involved police officers. Additionally, the video footage recovered from the immediate area of the crime further substantiated the allegations against Appellant

The jury was free to determine which testimony to believe and which to disregard, based on *Champney* The jury chose to believe the testimony of the various civilian and expert witnesses and police officers, and chose to rely on the physical evidence. This does not "shock one's sense of justice."

As such, the verdict is not against the weight of the evidence.

*Unduly Harsh and Excessive Sentence*

Appellant's claim that the sentence imposed is unduly harsh and excessive is meritless. Appellant contends this court failed to take into account mitigating, relevant, and necessary factors to be considered by a sentencing court. Appellant is seeking to challenge wholly discretionary aspects of his sentence A thorough review of the record reveals there is nothing in the record to suggest that the sentence imposed was inappropriate under the circumstances.

Pennsylvania courts stress that sentencing, within the sound discretion of the trial court, will not be disturbed absent a manifest abuse of discretion. *Commonwealth v Bowen*, 975 A 2d 1120, 1122 (Pa. Super. 2009). A manifest abuse of discretion is proven when appellant can establish that the sentencing court "ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Bowen*, 975 A.2d at 1122 (quoting *Commonwealth v Rodda*, 723 A.2d 212, 214 (Pa. Super 1999)). Furthermore, "when imposing a sentence, the sentencing court is required to consider the sentence ranges set forth in the Sentencing Guidelines, but it is not bound by the Sentencing Guidelines." *Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008).

13

In considering whether a sentence is manifestly excessive the appellate court must give great weight to the sentencing judge's discretion, as he is in the best position to measure various factors such as the nature of the crime the defendant's character, and the defendant's display of remorse, defiance, or indifference. *Commonwealth v Ellis*, 700 A.2d 948, 958 (Pa. Super 1997) (citing *Commonwealth v Anderson*, 552 A.2d 1064 (Pa. Super. 1988)).

The discretionary aspects of a sentence may not, as a right, be challenged on appeal. *Id.* (citing 42 Pa.C.S.A § 9781). When an appellant challenges the discretionary aspects of a sentence, there is no automatic right to appeal; rather, an appellant must petition for allowance of appeal. *Commonwealth v W H M*, 932 A.2d 155, 162 (Pa Super. 2007)

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S A § 9781(b).

*Commonwealth v Moury*, 922 A 2d 162, 170 (Pa. Super. 2010) (citing *Commonwealth v Evans*, 901 A.2d 528 (Pa. Super. 2006)) (internal citations omitted).

"A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either· (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Moury*, 992 A.2d at 170 (quoting *Commonwealth v Sierra* 752 A.2d 910, 912-13 (Pa. Super. 2000) (internal quotations omitted). There must be articulated reasons given by Appellant that illustrate the trial court's actions violated the sentencing code *Moury*, 922 A.2d at 170

14

Sentencing guidelines "list ranges within which a court may sentence for particular crimes, they are not mandatory and courts will take into account various other factors when sentencing." *Commonwealth v Archer*, 722 A.2d 203, 210 (Pa. Super. 1998) (quoting *Ellis*, 700 A.2d at 958). "[W]here the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v Clarke*, 70 A 3d 1281, 1287 (Pa. Super. 2013) (internal citations omitted)

It is true that the sentence imposed here is in the aggravated range of the guidelines; however, this court could have sentenced the defendant to an additional fifty-two years' of incarceration and remained within the statutory maximum. Moreover, the detailed and exhaustive sentencing hearing, in which testimony was taken from witnesses, is entirely consistent with the fundamental norms of the sentencing process. Therefore, it is unclear that Appellant has raised a substantial question to the discretionary aspects of his sentence. If the Superior Court finds that a substantial question does exist, an analysis of the record will vindicate this court's sentence as both lawful and appropriate.

The prior record score and the offense gravity score are part of the guidelines used by the court to create uniformity in sentencing. *Ellis*, at 958. Furthermore, "if a sentencing court considers improper factors in imposing sentence upon a defendant, the court thereby abuses its discretion, but the sentence imposed is not rendered illegal. Otherwise, every erroneous consideration by a sentencing court will render the sentence illegal in a manner which cannot be waived by a defendant." *Commonwealth v Krum*, 533 A.2d 134, 135 (Pa. Super. 1987) (*en banc*). Additionally, "the guidelines list ranges within which a court may sentence for particular crimes; they are not mandatory and courts will take into account various other factors when sentencing."

*Commonwealth v Archer*, 722 A.2d 203, 210 (Pa. Super. 1998) (quoting *Ellis*, at 958). *See also Commonwealth v. Saranchak*, 675 A.2d 268, 277, n. 18 (Pa. 1996) (stating that a court has no duty to impose a sentence considered appropriate under the Sentencing Guidelines).

In the instant case, Appellant's prior record score was zero. N.T., Sentencing Hearing, 04/11/2016, at 5. Appellant was found guilty of two counts of attempted murder and two counts of aggravated assault. *Id*. The offense of attempted murder and aggravated assault merged into the charge of attempted murder with an offense gravity score ("OGS") of 13. *Id*. Since Appellant used a loaded firearm during the incident the guidelines range for one count of attempted murder is 78 to 96 months, plus or minus 12. *Id; see* 204 Pa Code § 303.17(b). Appellant also was found guilty of two violations of the Uniform Firearms Act. The OGS for section 6106, based on the loaded firearm, is 9. *Id*. The guidelines range for section 6106 is 12 to 24 months, plus or minus 12. *Id*. The OGS for section 6108, based on the loaded firearm, is 5. The guidelines range for section 6108 is 12 to 18 months, plus or minus 3. Defense counsel concurred with the above calculations. *Id*.[2]

The statutory maximum sentences for the crimes for which Appellant was found guilty are: 18 Pa.C.S. § 901(a) criminal attempt – murder, 10 to 20 years (two counts), 18 Pa.C.S. § 2702(a) aggravated assault, 10 to 20 years (two counts); 18 Pa C S § 6106(a)(1) VUFA, 3 ½ to 7; and 18 Pa.C.S. § 6108 VUFA, 2 ½ to 5 years.[3] The aggregate statutory maximum is 46 to 92 years' incarceration. *Id*.

---

[2] The Sentencing Guidelines were calculated utilizing the deadly weapon enhancement. 204 Pa Code § 303.10(a), N T , 04/11/2016, at 5
[3] *See* 18 Pa C S. § 1103-04, 42 Pa.C S § 9755(b) and § 9756(b).

The Appellant was sentenced as follows: As to the two counts of attempted murder, 20 to 40 years on each count.[4] As to the § 6106 violation of Uniform Firearms Act charge, 2 to 4 years; and § 6108 violation of Uniform Firearms Act charge 1 to 2 years. All sentences were concurrent to each other. N T., 04/11/2016, at 28. The aggregate sentence imposed was 20 to 40 years of incarceration. The sentence imposed is in the aggravated range, yet well within the statutory guidelines

Additionally, Appellant contends this court failed to take into account mitigating, relevant, and necessary factors, including his "age, rehabilitative needs, and defensive actions," at the sentencing hearing Appellant's Pa.R.A.P. 1925(b) Statement at ¶ 3. A review of the record, however, shows this court considered all of these factors, as well as others, prior to sentencing:

> THE COURT· Mr. Thomas, I've considered the presentence, mental health, the prior record score report, the facts and circumstances of the case, the testimony of the jury trial, as well as the arguments of counsel, and the sentencing guidelines.
>
> This was a shootout in the street It was very, frankly, outrageous, something that you expect to see in a country where there's a civil war or people at war. The arson case is not the issue. The arson case is not the issue here with the sentence. The real issue is what happened on the street that day and the fact that you ran down the street unloading, tried to kill two people. People were running for their lives and it wasn't at three in the morning. I think late afternoon if I remember correctly.
>
> Mr. GRENNEL: About five o'clock in the afternoon.
>
> \* \* \*
>
> THE COURT: . . . What happened here went beyond anything that I normally see in this courtroom and certainly anything we should allow in the city. While I understand the mental health report quoted by Counsel, I don't think that the doctor knew the full facts and circumstances of this case But even if he did, that's what the psychologist says.
>
> Based on what I heard at trial, what I saw with the video, and what occurred here, I'm going into the aggravated portion of the guidelines but I'm keeping within the guidelines. I think this is the appropriate sentence to protect the community, and I hope you use the time there in a constructive way so that when you do get out --

---

[4] As stated, the aggravated assault charge merged with attempted murder for sentencing purposes N T., 04/11/2016 at 28

which you will get out – and I don't know what will happen in terms of being deported as Mr. Giuliani says. I don't know where things will be 20 years from now with our immigration laws. I don't even know where they're going to be from year to year anymore. We'll have to deal with those consequences.

N.T. 04/11/2016, at 27-29.

Appellant fails to demonstrate that the sentence is inappropriate under the sentencing code or inconsistent with a specific provision of the sentencing code. The sentence imposed does not violate norms that underlie the sentencing process. Despite Appellant's contention, this court took all appropriate factors into consideration in determining this sentence A thorough review of the record reveals an in-depth discussion of Appellant's prior criminal history, facts and circumstances of the case, and testimony from witnesses during the jury trial The court based sentencing on this as well as Appellant's presentence report and mental health report.

As is evident from the record, the sentence imposed in this case was not manifestly unreasonable nor was it the product of partiality, prejudice, bias, or ill will. Rather, it is entirely appropriate given the violence committed by Appellant. Because the trial court is given broad discretion in sentencing, and Appellant does not assert that the trial court went beyond the sentencing guidelines, this claim must fail.

18

## Conclusion

In summary, this court has carefully reviewed the entire record and finds no harmful, prejudicial, or reversible error and nothing to justify the granting of Appellant's request for relief. For the reasons set forth above, the judgment of the trial court should be affirmed.

J.